[No. 7365. Decided January 4, 1909.]

THE CITY OF SPOKANE, *Appellant*, v. A. M. MACHO, *Respondent*.[1]

CONSTITUTIONAL LAW—CLASS LEGISLATION—POLICE POWER—ORDI-NANCES—FALSE REPRESENTATIONS BY EMPLOYMENT AGENCIES. In an ordinance to regulate and license employment agencies, a section making it a misdemeanor for the keeper of an employment agency to make wilful misrepresentations, or to wilfully deceive any person seeking employment, and take a fee for such employment, is unconstitutional; since it is not general and impartial in its operation, but operates upon one class to the exclusion of others in respect to a penal act common to all classes of business, and exceeds the reasonable limit of police regulations.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 7, 1908, dismissing a prosecution for the violation of an ordinance, upon sustaining a demurrer to the complaint. Affirmed.

*L. R. Hamblen, F. D. Allen,* and *Harry A. Rhodes,* for appellant.

*J. M. Geraghty* and *Alex M. Winston,* for respondent.

CHADWICK, J.—Defendant was arrested and charged with the violation of an ordinance of the city of Spokane, Washington, entitled, "An ordinance licensing and regulating the keepers of employment offices and the business of employment agencies in the city of Spokane, providing a penalty

[1]Reported in 98 Pac. 755.

for the violation thereof," etc. Among other matters covered by the ordinance, it is provided:

"Sec. 7. It shall be unlawful for any person keeping an employment office to make any wilful misrepresentations to any person seeking employment through such office, or to wilfully deceive any person seeking employment through such office, and take a fee for such employment." Ordinances, Spokane No. A2633.

Defendant was convicted before the police magistrate of the city; whereupon he appealed to the superior court. In that court he demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, the defendant discharged, and from a judgment of dismissal, the city has appealed.

The charter provisions relied upon to sustain this prosecution are as follows:

"Sec. 53. To regulate or prohibit the carrying on within the corporate limits of the city, of occupations which are of such a nature as to affect the public health or good order of the city, or to disturb the public peace, and which are not prohibited by law; and to provide for the punishment," etc.

"Sec. 55. To provide for the punishment of all disorderly conduct and of all practices dangerous to the public safety or health, and make all regulations necessary for the preservation of public morality, health, peace, and good order," etc.

While no account of it was taken in the court below, subd. 5, § 59, "To license, tax, regulate, and control hawkers, peddlers, . . . and all other classes of business not otherwise in this charter provided for," is now urged as sufficient in itself, or when taken in connection with the others, to warrant a conviction and sentence. Assuming that it is within the police power of the city to enact an ordinance to protect the citizen from frauds, impositions, wilful misrepresentations, and deceits, § 7 of the ordinance in question cannot be sustained. It is a fundamental proposition that an ordinance must be fair in its terms, impartial in its operation,

and general in its application.  Dillon, Municipal Corpora-
tions, 322; McQuillan, Municipal Ordinances, 193.  The ordi-
nance before us assumes to license and regulate the business
of employment agencies.  This has been held to be a proper
exercise of the police power of the state.  *Price v. People*,
193 Ill. 114, 61 N. 5. 844.  But § 7 goes further.  It defines
a common law crime and provides a penalty for its infrac-
tion; not for all who may be guilty of a like offence, but the
employment agent who shall, by wilful misrepresentation or
deceit, obtain the money of another.  It cannot be denied that
the business of the employment agent is a legitimate business,
as much so as is that of the banker, broker, or merchant; and
under the methods prevailing in the modern business world,
it may be said to be a necessary adjunct in the prosecution of
business enterprises.  The vice of the section under discus-
sion lies in this, that it makes an act criminal in one who may
be engaged in a lawful business, while the act committed
under like circumstances by another may not be so.  A busi-
ness may be classified by ordinance under the police power
of a state if the object of the legislation is revenue, and all
necessary and proper penalties may be provided to insure its
due enforcement.  But if the object is regulation merely, such
classification will not be tolerated.  *In re Camp*, 38 Wash.
393, 80 Pac. 547.

It was frankly admitted in the argument of this case
that § 7 was enacted for the purpose of regulating the busi-
ness of employment agencies.  When exercising its power to
regulate a business, the municipality may classify subjects
of legislation, but the law must treat alike all of a class to
which it applies, and must bring within its classification all
who are similarly situated or under the same condition.  From
the very nature of things, there can be no dissimilarity of
condition or situation between the employment agent who in-
dulges in a false pretense and any other person who resorts to
deceit or fraudulent representations to accomplish a wayward
purpose.

"The classification must be based on some reason suggested by a difference in the situation and circumstances of the subjects treated, and no arbitrary distinction between different kinds or classes of business can be sustained, the conditions being otherwise similar." *State v. Sheriff of Ramsey County,* 48 Minn. 236, 51 N. W. 112.

Under the rule just quoted, those engaged in a business lawful and orderly in itself, although subject to license and regulation, cannot be made a class upon which a penal statute shall operate to the exclusion of others; for the crime defined is not common to the business of employment agencies, but common to all, and to be sustained must include within its terms all who may be likewise guilty. It has been held that "an ordinance which would make the act done by one penal and impose no penalty for the same act done under like circumstances by another, could not be sanctioned or sustained because it would be unjust and unlawful." *Tugman v. Chicago,* 78 Ill. 405; *Chicago v. Rumpff,* 45 Ill. 90, 92 Am. Dec. 196; *May v. People,* 1 Colo. App. 157, 27 Pac. 1010; McQuillan, Municipal Ordinances, 193.

While the cases cited were all upon a different state of facts, in that they sought to exempt a class within a class, yet the principle applies with undiminished force to the case at bar. This is apparent when it is remembered that it is the act with which the law is concerned, rather than the business in which one may be engaged when he commits it. It is the law that stands at the bar of this court for judgment; not the respondent. To sustain § 7, it must be measured by the general welfare clauses of the charter hereinbefore quoted, and when so graduated it cannot meet the test. It makes the act of one engaged in a particular business criminal, while the same act committed by another in a different business may go unchallenged by the city. If the respondent is guilty, those aggrieved must resort to the general law of the state for a remedy. Subd. 5 of § 59 can have no application here. The only question open under § 7 is whether, in the exercise

of its authority, the city has gone beyond the reasonable and constitutional limit of police regulation. We decide that it has done so.

The judgment of the lower court is affirmed.  ﾟ

FULLERTON, MOUNT, and DUNBAR, JJ., concur.
HADLEY, C. J., and CROW, J., took no part.