[No. 12320. Department One. March 1, 1915.]

## THE STATE OF WASHINGTON, *Appellant*, v. ROBINSON COMPANY, *Respondent.*[1]

CONSTITUTIONAL LAW—SPECIAL LEGISLATION—FOOD—REGULATION—STOCK FOOD—STATUTES. Rem. & Bal. Code, §§ 6011-6022, regulating the sale of "concentrated commercial feeding stuffs" and defining the same as including "wheat bran, wheat middlings, wheat shorts . . . mixed feeds and mixed meals made from seeds or grains," etc., is invalid as violating the inhibition of the state constitution (art. 1, § 12), against class legislation; inasmuch as it exempts from the operation of the act cereal or flouring mills, permitting them to sell "mill bran, shorts, or middlings made in the regular process of manufacturing cereal or flour," without complying with the statutory regulations therein provided, while all others selling the same class of feed are required to submit thereto.

SAME. The act cannot be held valid by interpolating the word "only" in section 13 (Rem. & Bal. Code, § 6022), exempting cereal and flouring mills selling "only" mill bran, etc., as no such intention appears.

SAME—FOOD—REGULATION—STATUTES — PARTIAL INVALIDITY. The act cannot be held valid by the exclusion of § 13 thereof (Rem. & Bal. Code, § 6022), the section exempting cereal or flouring mills; since said section is a material part of the act, and to hold this section void and the balance of the act valid would be determining that the act applies to all persons dealing in such feed stuffs, when the legislature has expressly declared to the contrary.

Appeal from a judgment of the superior court for King county, Smith, J., entered April 27, 1914, dismissing a prosecution for violation of the act relating to commercial feed stuffs, upon sustaining a demurrer to the information. Affirmed.

*The Attorney General* and *Scott Z. Henderson, Assistant,* and *John F. Murphy,* for appellant.

*Donworth & Todd,* for respondent.

MOUNT, J.—This is a prosecution based on an information charging the respondent with a violation of the provisions of

[1]Reported in 146 Pac. 628.

ch. 201 of the Laws of 1909, p. 705 (Rem. & Bal. Code, § 6011 *et seq.* [P. C. 163 § 149 *et seq.*] ).   The trial court sustained a demurrer to the information, upon the ground that the act was void as being in contravention of § 12, art. 1 of the state constitution, and upon other grounds.   The state has appealed from an order of dismissal.

Section 1 (Id., § 6011) of the act above referred to is as follows:

"The term 'concentrated commercial feeding stuffs' as used in this act shall include linseed meals, cocoanut meals, gluten feeds, gluten meals, germ feeds, dairy feeds, starch feeds, sugar feeds, dried brewers' or distillers' grains, malt sprouts, feeds made from ground cereals or by-products therefrom, including wheat bran, wheat middlings, and wheat shorts, slaughterhouse waste products when sold as feeds, mixed feeds and mixed meals made from seeds or grains, and all materials of similar nature used for food for domestic animals, condimental feeds, stock feeds, and all patented proprietary or trade stock and poultry feeds for which nutritive value is claimed; but it shall not include hay or straw, whole seeds, or unmixed meals made from the entire grains of wheat, rye, barley, oats, corn or other cereals, nor wheat flours or other flours."

Section 2 (Id., § 6012) requires every manufacturer or dealer before offering such feed for sale to file with the director of the state agricultural experiment station, at Pullman, Washington, a sworn certificate setting forth, among other things, the ingredients of which the feed is composed and the percentage of certain of its constituents.

Section 3 (Id., § 6013) requires every person offering such feed for sale to affix to every package a tag or label with certain information printed thereon, and to affix a stamp purchased from the director of the experiment station, showing that the feed has been registered and the inspection tax paid.

Section 4 (Id., § 6014) requires the director of the experiment station to register the feed and to furnish stamps or labels showing the registration, with the provision that stamps must be bought in lots of $5 each for each variety of feed.

Section 5 (Id., § 6015) requires each manufacturer or dealer to file an annual statement of the number of pounds of each brand of feed sold or caused to be offered for sale in the state for the preceding year.

Section 6 (Id., § 6016) provides the fees to be paid and the annual report of the director of the experiment station.

Section 7 (Id., § 6017) prohibits the sale of non-labeled or inferior grades of feed which has not been registered and which does not contain the tag and an analysis of the feed, and fixes a penalty for a sale in violation of the act.

Section 8 (Id., § 6018) provides for samples to be taken from all packages offered for sale.

Section 9 (Id., § 6019) provides a penalty for interfering with the director of the experiment station in making inspections and obtaining samples of feed offered for sale.

Section 10 (Id., § 6020) provides that the director of the experiment station may prescribe and enforce such rules and regulations as he may deem necessary to carry the act into effect.

Section 11 (Id., § 6021) authorizes the attorney general, or the prosecuting attorneys of the several counties, to prosecute violators of the act.

Section 12 is a repeal of laws in conflict.

Section 13 (Id., § 6022) provides as follows:

"The provisions of this act shall not apply to cereal or flouring mills selling mill bran, shorts, or middlings made in the regular process of manufacturing cereal or flour."

Section 12 of art. 1 of the constitution provides as follows:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

It will be noticed that § 1 (Id., § 6011) of the act, hereinabove quoted, defines "concentrated commercial feeding stuffs" to include mixed feeds and mixed meals made from

seeds or grains, and all materials of similar nature used for food for domestic animals. That section also provides that the definition "shall not include hay or straw, whole seeds, or unmixed meals made from the entire grains of wheat, rye, barley, oats, corn or other cereals, nor wheat flours or other flours." The act prohibits the sale of concentrated commercial feeding stuffs by any person, company, corporation or agent who shall not comply with the provisions of the act. Section 13 (Id., 6022) expressly exempts cereal and flouring mills selling mill bran, shorts, or middlings made in the regular process of manufacturing cereal or flour from the provisions of the act. It is apparent, we think, that this is an unreasonable and unjust discrimination. Cereal and flouring mills are authorized to sell mixed feeding stuffs without complying with the terms of the act; while all other persons and corporations selling the same thing are required to comply with the terms of the act, which imposes onerous conditions.

In *In re Camp*, 38 Wash. 393, 80 Pac. 547, we held that an ordinance requiring a license for the peddling of fruits, vegetables, etc., but exempting farmers disposing of produce grown by themselves, was unconstitutional because it permitted growers of fruits and vegetables to sell while prohibiting others from doing the same thing. In that case we quoted from *State ex rel. Luria v. Wagener*, 69 Minn. 206, 72 N. W. 67, 65 Am. St. 565, 38 L. R. A. 677, saying:

"In the same manner as the act here in question attempts to distinguish between peddling by the manufacturer and his servant and peddling by the purchaser from such manufacturer, it attempts to distinguish between peddling by the farmer or nurseryman and peddling by the purchaser from such farmer or nurseryman; between peddling by the butcher and peddling by the purchaser from such butcher. These distinctions are arbitrary and no proper basis for classification."

In *Spokane v. Macho*, 51 Wash. 322, 98 Pac. 755, 130 Am. St. 1100, 21 L. R. A. (N. S.) 263, we held an ordinance of the

city of Spokane unconstitutional which attempted to regulate by licensing employment agencies. In that case we said, quoting from *Tugman v. Chicago*, 78 Ill. 405:

"An ordinance which would make the act done by one penal and impose no penalty for the same act done under like circumstances by another, could not be sanctioned or sustained because it would be unjust and unlawful."

In *Seattle v. Dencker*, 58 Wash. 501, 108 Pac. 1086, 137 Am. St. 1076, 28 L. R. A. (N. S.) 446, where a city ordinance imposed a license tax upon the sale of goods by automatic devices, which discriminated between different merchants selling the same class of goods, we held such an ordinance unconstitutional because it was in violation of the section of the constitution above referred to.

We are satisfied that, under the rule in these cases, the act under consideration is clearly in violation of the constitutional provision quoted, because it authorizes cereal and flour mills to sell mixed and unmixed feeding stuffs, while other persons selling the same feeding stuffs are required to comply with the provisions of the act. It is plain, we think, that § 13 (Id., § 6022), for that reason, renders the whole act void.

It is argued by the *Attorney General* that a similar act in the state of Indiana was approved by the supreme court of the United States in *Savage v. Jones*, 225 U. S. 501. In that case the supreme court of the United States upheld a similar act to the extent that it was not in contravention of any act of the United States or of the Federal constitution. But the Indiana act above referred to did not contain any provision similar to § 13 (Id., § 6022) of the act of this state. The question now under consideration was not in the case of *Savage v. Jones*, and the question was therefore not considered by the supreme court of the United States in that case.

The *Attorney General* further argues that § 13 (Id., § 6022) of the act under consideration should be construed to apply to cereal and flour mills selling *only* mill bran,

shorts, or middlings made in the regular process of manufacturing cereal or flour. In other words, he would have us interpolate the word "only" after the word "selling," in § 13 (Id., § 6022). But it is plain from reading § 1 (Id., § 6011) hereinabove quoted, that it was intended that cereal and flouring mills should be exempted from the provisions of the act, and that therefore such mills might sell either mixed or unmixed feeds, because in § 1 there is a provision which says that concentrated commercial feeding stuffs, as defined by that section, shall not include unmixed meals made from the entire grains of wheat, rye, barley, oats, corn, or other cereals, nor wheat flours or other flours. So that it is perfectly plain that for unmixed feeding stuffs it was not necessary to exempt cereal and flouring mills. Section 13 (Id., § 6022) was inserted for the purpose of excluding these mills from the provisions of the act.

The *Attorney General* further argues that if § 13 (Id., § 6022) is void, it may be excluded from the act, and the balance of the act may still remain a valid law. But it is apparent that § 13 (Id., § 6022) is a material part of the act. It is more than probable that if this section had not been inserted the act would not have passed. It was inserted for the purpose of excluding cereal and flouring mills from the operation of the act. To say that this section is unconstitutional and does not affect the remainder of the act is to say that every person, firm or corporation is bound to comply with the terms of the act, when the legislature itself has said that cereal and flouring mills are not bound by the act. In short, to hold this section void and the rest of the act valid is to determine, in face of an express statement of the legislature to the contrary, that the act applies to all persons dealing in concentrated commercial feeding stuffs.

We are of the opinion, therefore, that the trial court properly sustained the demurrer upon this ground. There are many other objections to the act urged in the respondent's

brief, but, in view of our opinion upon this question, it is not necessary to consider other objections.

The judgment is therefore affirmed.

HOLCOMB, PARKER, and CHADWICK, JJ., concur.