[No. 27410. *En Banc.* May 31, 1939.]

K. O. PEARSON, *Respondent,* v. THE CITY OF SEATTLE et al., *Appellants.*[1]

[1]Reported in 90 P. (2d) 1020.

*A. C. Van Soelen* and *John A. Homer,* for appellants.

*Ralph Hammer* and *C. P. Borberg,* for respondent.

MILLARD, J.—Plaintiff, who is engaged in the business of selling solid fuel at retail in the city of Seattle, brought this action to recover amount of license fees alleged to have been illegally exacted of him under ordinance No. 67614. The validity of the ordinance is challenged upon the ground that, being purely a police measure, the ordinance is, nevertheless, and under that guise intended to be, and does in actual operation have the effect of being, a revenue measure; that it is discriminatory in its imposition of a burden upon solid fuel dealers which is not imposed upon other dealers of commodities in the city of Seattle, particularly those dealing in liquid fuel; and the license fee imposed is excessive and unreasonable. Trial of the cause to the court resulted in the entry of a decree adjudging ordinance No. 67614 to be unconstitutional and void. Defendants appealed.

In June, 1920, the city of Seattle enacted ordinance No. 41014, which is still in force, governing the weighing and measuring of all commodities in the city of Seattle. Under that ordinance, which is a complete weights and measures code, the retail coal and wood (solid fuel) business is conducted. On December 21, 1935, ordinance No. 65841, regulating the sale and delivery of solid fuel within the city of Seattle, became effective. That ordinance was repealed by enactment August 18, 1937, of ordinance No. 67614 which declares, as follows, that it is a police measure and was not intended to be a revenue measure:

"AN ORDINANCE relating to and regulating the sale and/or delivery of solid fuel; providing for the pre-

vention of frauds and the issuance of licenses in connection therewith; defining offenses and prescribing penalties therefor; creating an inspection and enforcement fund; and repealing ordinance No. 65841.

"BE IT ORDAINED BY THE CITY OF SEATTLE AS FOLLOWS:

"Section 1. EXERCISE OF POLICE POWER: This entire ordinance shall be deemed and construed to be an exercise of the police power of the city of Seattle and the state of Washington for the preservation and protection of the public peace, health and welfare and the prevention of frauds, and all of its provisions shall be liberally construed with a view to the effectuation of such purpose  .  .  .

"SOLID FUEL INSPECTION AND ENFORCEMENT FUND: That there be, and is hereby, created in the City Treasury the Solid Fuel Inspection and Enforcement Fund, into which fund shall be paid seventy per cent. (70%) of all license fees and other fees paid to the City under the provisions of this ordinance. The balance of thirty per cent (30%) shall be payable into the City's General Fund as the estimated increased burden thereon occasioned by this ordinance. This act is declared to be a police power, and not a revenue measure, and said Solid Fuel Inspection and Enforcement Fund shall be used by the City solely to pay the salaries of the Solid Fuel Inspectors whose offices are hereby created, to defray the cost of operation and maintenance (including a reasonable depreciation allowance) of automobiles used by such Inspectors and to meet the incidental expenses incurred by the Division of Weights and Measures in the enforcement of the provisions of this ordinance. Monthly bills against said fund for such expenses, other than salaries, shall be submitted to the Auditing Committee of the City Comptroller before allowance of the same. It shall be unlawful to divert said Solid Fuel Inspectors from performance of their duties prescribed by this ordinance or to devote their efforts or time to the performance of other city functions."

Under the provisions of the foregoing ordinance, all retail dealers in coal, wood, and coke (defined by the ordinance as "solid fuel") are required to obtain an

annual license from the city of Seattle and pay a fee therefor of twenty-five dollars for each fuel-selling place of business, plus fifteen dollars for each fuel truck used in excess of one.

In addition to the required annual license fee of twenty-five dollars and a further fee of fifteen dollars for each truck in excess of one, the solid fuel ordinance (No. 67614) requires license plates on each delivery vehicle and prohibits delivery of any fuel unless weighed by licensed city weighmasters upon approved scales, and requires delivery of a copy of the weight certificate to the consumer. Under the ordinance, it is unlawful to deliver or furnish any false or irregularly certified delivery ticket or one containing a misrepresentation or misstatement of fact; to deliver in the same vehicle two or more consignments of solid fuel at the same time unless the consignments have been separately weighed and certified; or to go from house to house with, or transport, solid fuel with intent to sell the same or exposing or offering the same for sale at wholesale or retail, or with such intent to stand or park a vehicle containing solid fuel on a public highway or in a public place, or with such intent and in a vehicle containing solid fuel to cruise upon public highways and public places. To make any misleading statement in any advertisement respecting the sale or delivery of solid fuel and other acts of omission or commission, are made unlawful by the ordinance. The thirty per cent of the revenue obtained under the ordinance which is paid into the city's general fund is placed to the credit of the park department and the library department.

Ordinance No. 67614 (adopted in 1937) repealed ordinance No. 65841 (adopted in 1935), which regulated the same business, required the same license fee, and, except as to features not material to this appeal,

differs not from No. 67614. At the time of the adoption of ordinances No. 65841 in 1935 and No. 67614 in 1937, ordinance No. 41014 (adopted in 1920) was, and still is, in effect. Ordinance No. 41014 relates to and regulates weights and measures and establishes standards therefor. Necessarily, this weights and measures ordinance will have full force and effect as applied to the retail solid fuel industry if ordinances Nos. 65841 and 67614 are invalid.

The weights and measures ordinance (No. 41014) requires that all weights and measures shall be of the standard fixed by the superintendent of weights and measures. Provision is made for the appointment of weighmasters, the issuance of the certificates of weight, and where the commodity is ordinarily or usually sold in bulk, that the same shall be weighed or measured upon officially tested and approved weights, measures, and scales. The ordinance provides for the inspection and certification of scales and makes it unlawful for any vendor to sell or offer to sell and deliver any coal, coke, hay, straw, grain, or certain other commodities unless the same is sold upon the basis of the true net weight and unless accompanied by sales ticket stating the name, kind and quantity of the commodity and the price paid for the same.

The weights and measures ordinance (No. 41014, enacted in 1920) does not impose financial burdens upon the industries regulated by it; the cost of its enforcement is borne by the general fund of the city. The solid fuel ordinance (No. 67614, enacted in 1937) places a burden upon the solid fuel industry which no other similar industry within the city is required to bear.

Counsel for appellants contend that the coal and wood business is a business so distinctive and separate that it stands in a class by itself for the purpose of

police regulation or license taxation; that, if the ordinance be treated solely as a regulatory measure, the license fee is not unreasonable and the burden rests upon respondent to show that it is unreasonable; and that the ordinance should be treated as both a regulation and revenue measure if by so doing its validity will be sustained, and as such a measure it may not be successfully challenged on the amount of the license fee.

Counsel for respondent argue that, while a business may be classified by ordinance under the police power of the state if the object of the legislation is revenue, the city may not, by the challenged ordinance, the declared object of which is regulation merely, make such classification.

Counsel for appellants concede that, if the ordinance were solely a regulatory measure, the position of respondent is correct that the classification may not be such as to unjustly discriminate against persons or against a particular business by omitting from the regulation persons or lines of business operating in the same class. It is insisted, however, that a business may be classified by ordinance under the police power of the state if the object of the legislation is revenue; therefore, as the ordinance (No. 67614) is a combined regulation and revenue measure, neither the classification or amount of fee is open to attack.

In *Stull v. De Mattos*, 23 Wash. 71, 62 Pac. 451, 51 L. R. A. 892, we held that, while a city ordinance which charged auctioneers with daily license fee might be valid as an exercise of the taxing power of the city, the ordinance could not be sustained as a legitimate exercise of the power to regulate business, for the reason that it was unreasonable and prohibitive in its nature. The ordinance in that case was not, by its

terms, as is the ordinance in the case at bar, restricted to the exercise of the police power.

In *Spokane v. Macho,* 51 Wash. 322, 98 Pac. 755, 30 Am. St. 1100, 21 L. R. A. (N. S.) 263, we held that an ordinance to regulate and license employment agencies was unconstitutional as a police regulation, as it operated upon one class to the exclusion of others in respect to a penal act common to all classes of business, and exceeded the reasonable limit of police regulation. The purpose of that ordinance was within the proper exercise of the police power, but it went further, in that it defined a common law crime and provided a penalty, not for all who might have been guilty of a like offense, but specifically for employment agencies who purportedly were regulated by the ordinance. In the course of our opinion in that case, we said:

"The vice of the section under discussion lies in this, that it makes an act criminal in one who may be engaged in a lawful business, while the act committed under like circumstances by another may not be so. A business may be classified by ordinance under the police power of a state if the object of the legislation is revenue, and all necessary and proper penalties may be provided to insure its due enforcement. But if the object is regulation merely, such classification will not be tolerated. *In re Camp,* 38 Wash. 393, 80 Pac. 547."

*In re Camp,* 38 Wash. 393, 80 Pac. 547, cited as authority for the foregoing quoted language, was based on an ordinance which, under the guise of regulating peddlers, forbade all persons from peddling fruits, etc., within the fire limits of the city, but specifically exempted from operation of the ordinance farmers disposing of produce grown by themselves. We held that the ordinance was invalid under Art. I, § 12 of the state constitution, which provides that no law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immuni-

ties which upon the same terms shall not equally belong to all citizens or corporations.

In *Seattle v. Dencker,* 58 Wash. 501, 108 Pac. 1086, 137 Am. St. 1076, 28 L. R. A. (N. S.) 446, we held that a city ordinance which provided a license tax upon the sale of goods by means of automatic devices was invalid, since it discriminated against a simple mode of doing business concededly lawful and fair and which in no way involved the police power. We said:

"There are certain fundamental principles which may be conceded, viz.: that it is a well-known attribute of sovereignty to tax occupations for the purpose of raising revenue, and that such tax may be imposed in the form of a license fee; that the state may tax all or any occupations or business carried on within its boundaries, imposing the burden upon some and passing by others; that only considerations of general policy determine such selections, and that there is no restriction unless it be imposed by the constitution. This determination, however, must not be exercised arbitrarily or fraudulently, and while the policy of the enactment may not be questioned by the courts, the discretion exercised by the law-making power must be natural and reasonable, and consistent with the general principles of law and the fundamental principles upon which our government is founded. When these principles are violated to the extent of depriving the citizen of natural or constitutional rights, it is the duty of the court to intervene in his behalf. A wilderness of authority might be cited on this interesting and fruitful subject of litigation; for, from the beginning of not only our government but of all government, the contest has been waged between legislative powers and individual rights. But from the best considered cases, the general principles above announced can be deduced.

"Tested by these principles, can this ordinance be sustained? We think not. It is plain that there is no police power or regulation involved, a power which is the sustaining principle in ninety-nine out of a hundred of the cases cited; for there is no claim that the busi-

ness discriminated against here affects in any way the public morals or the business interests of the community, except as it affects the interest of others engaged in the same business but purely in the way of competition. The article that is sold does not in any way involve the police power. Hence, it is a matter of no public concern whether it be sold by device or by some other method. And here it is well to note a vital distinction, founded on sound and just principles of law, between the power to tax occupations under the form of a license which, by reason of the character of the occupation, is subject to police regulation, and the power to tax what are termed useful trades and employments, under the guise of a license. It is well settled that the license required of employments of the latter character can carry with it only such fee as is necessary to make compensation for the regulation services, and cannot be perverted into a tax. Especially is this true when the attempt is made to discriminate between occupations alike in principle but differing only in mode of operation in some trifling particular.

". . . The tendency of this kind of an income is to foster monopolies, for a monopoly exists when the manufacture and sale of any commodity is restrained to one or a certain number. It is said that it has three inseparable consequences—the increase of the price, the badness of the wares, the impoverishment of others. Hence, it naturally follows that monopolies are odious to the law, and the law will concern itself to restrain rather than to nourish them. If this ordinance can be sustained, there is no limit to the arbitrary, capricious, or tyrannical imposition of taxes, and the constitutional guaranty that 'no law shall be passed granting to any citizen, class of citizens or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations,' becomes a dead letter. Discrimination to the extent exhibited in this ordinance discourages enterprise, paralyzes progress, is a deprivation of liberty, and is entirely inconsistent with the true principles and the genius of our government.

None of the cases cited, from either this or any other court, numerous as they are, go to the extent of discriminating against a simple mode of doing business, which is conceded to be lawful and fair, and which in no way involves the principles of police power or regulation."

In *State v. Robinson Co.*, 84 Wash. 246, 146 Pac. 628, we partially invalidated chapter 201, Laws of 1909, p. 705, purporting to regulate the sale of concentrated food stuffs, as a violation of § 12, Art. I of the state constitution, for the reason that it exempted from the operation of the act cereal or flouring mills, permitting them to sell their products without complying with the statutory regulation imposed upon others. In part, our opinion was based on *In re Camp, supra, Spokane v. Macho, supra,* and *Seattle v. Dencker, supra,* with reference to which, we said:

"We are satisfied that, under the rule in these cases, the act under consideration is clearly in violation of the constitutional provision quoted, because it authorizes cereal and flour mills to sell mixed and unmixed feeding stuffs, while other persons selling the same feeding stuffs are required to comply with the provisions of the act. It is plain, we think, that § 13 (Id. § 6022), for that reason, renders the whole act void."

The ordinance (No. 67614) expressly declares in two of its sections that it is not a revenue measure; and in three separate places in the ordinance, quoted in the earlier portion of this opinion, it is provided that the ordinance shall be deemed and construed to be a police measure. The intention of the city council so clearly appears from the face of the ordinance that there can be no question as to the intention of the city council; there is no room for construction.

It fairly appears that the aggregate amount of the license fees charged on all of the solid fuel dealers who contribute to the cost of inspection and other

charges under the ordinance so greatly exceed the actual cost of the enforcement of the ordinance as to warrant the conclusion that the charges were so excessive as to render the ordinance unreasonable. The record discloses that, during the life of the solid fuel ordinance, the revenue thereunder amounted to approximately fifty-four thousand dollars. The expenditures for inspection and other expenses total approximately twenty-eight thousand dollars. That is, the actual excess of revenue over expenditures was almost one-half of the total revenue. Of this amount, there is a balance on hand of ten thousand dollars, which results from the deduction from the total revenue of thirty per cent which was applied to the general fund for the use of the park department and the library department.

Fuel oil trucks receive under the weights and measures ordinance little, if any, regulation or inspection, and the regulation or inspection to which they are subjected or receive costs the fuel oil operators nothing. Since the enactment of the solid fuel ordinance, the consumption of fuel oil has greatly increased. During the same period, the retail solid fuel dealers in the city of Seattle have decreased from 611 to 545.

It is clear that the ordinance is discriminatory in singling out a particular business and seeking to impose upon it special regulations when the ground had otherwise been fully covered by existing laws. The city may not, as it has attempted by ordinance No. 67614, impose a revenue tax under the guise of a police regulation.

Judgment is affirmed.

STEINERT, ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

BEALS, J., concurs in the result.

MAIN, J. (dissenting)—While it may appear that the fees to be paid by a dealer in solid fuel are high, it does not seem to me that they are so unreasonably high as to transform the ordinance, which recites on its face that it is a police regulatory measure, into a revenue measure. I think, also, that there is substantial basis for classifying and regulating the sale of solid fuel in a different manner than either liquid or gas fuel.

I therefore dissent.

BLAKE, C. J., and GERAGHTY, J., concur with MAIN, J.

[1]Reported in 90 P. (2d) 1026.