[No. 27852. *En Banc.* April 26, 1940.]

THE STATE OF WASHINGTON, *Appellant*, v. INLAND EMPIRE REFINERIES, INC., *et al., Respondents.*[1]

[1]Reported in 101 P. (2d) 975.

652

The Attorney General, John E. Belcher and L. C. Brodbeck, Assistants, for appellant.

R. E. Lowe, for respondent Inland Empire Refineries, Inc.

Thomas Balmer, Edwin C. Matthias, and Anthony Kane, for respondent Great Northern Railway Company.

Poe, Falknor, Emory & Howe, Wallace G. Mills, Harold P. Troy, and E. W. Anderson, amici curiae.

MILLARD, J.—This action was instituted by the state, under the provisions of chapter 186, Laws of 1939, p. 581, Rem. Rev. Stat. (Sup.), § 8370-78a [P. C. § 7029k-21] et seq. (which imposes, in addition to any other tax provided by law, an excise tax upon each distributor at the rate of one-fourth of one cent for each gallon of petroleum products withdrawn, sold, distributed, or in any manner used by such distributor within this state, except as expressly exempted by § 15 of chapter 186, p. 595, Rem. Rev. Stat. (Sup.), § 8370-80m [P. C. § 7029k-35]), to collect from the Inland Empire Refineries, Inc., a domestic corporation, taxes alleged to be due on the distribution of fuel oil by that corporation.

There is no dispute as to the amount of the tax. The purpose of the action is to test the validity of the exemption embodied in subd. (e), § 15, chapter 186, Laws of 1939, p. 595, Rem. Rev. Stat. (Sup.), § 8370-80m

[P. C. § 7029k-35], subd. (e). It is the state's position that that subdivision is invalid and must be discarded, with the result that distributors of locally refined fuel oil would become subject to the tax.

Montana Headlight Oil Company, a corporation which is in all respects situated precisely as the Inland Empire Refineries, Inc., intervened. The Great Northern Railway Company also filed a complaint in intervention because of a certain contract with the Inland Empire Refineries, Inc., under which the latter supplies the railway company with a portion of its fuel oil within this state.

This action was consolidated for purposes of trial with the action of the *Great Northern R. Co. v. Cohn, post* p. 672, 101 P. (2d) 985, for a declaratory judgment. In the action instituted by the railway company and in *Weyerhaeuser Timber Co. v. Cohn, post* p. 730, 101 P. (2d) 984 (which was brought to obtain a judgment declaratory of the rights of the timber company under the fuel oil tax statute (chapter 186, Laws of 1939), with respect to the exaction of a tax on fuel oil purchased by the timber company from two oil companies who were made parties defendant in the action), each plaintiff contended, in addition to insisting that it was not a distributor as defined by the statute, that the entire statute was invalid, on the ground that the exemptions embodied in subds. (d), (e), and (f) of § 15, chapter 186, Laws of 1939, p. 595, Rem. Rev. Stat. (Sup.), § 8370-80m [P. C. § 7029k-35], subds. (d), (e), and (f), were in contravention of the equal protection clause of the fourteenth amendment to the Federal constitution and the privileges and immunities clause (Art. I, § 12) of the state constitution.

The discussion in the opinion in *Great Northern R. Co. v. Cohn, post* p. 672, 101 P. (2d) 985, is restricted to the question whether the railway company is a dis-

tributor of fuel oil under chapter 186, Laws of 1939, or chapter 116, Laws of 1937, p. 459, if the latter act were held to be revived. The opinion in the case before us, which is an appeal by the state from the judgment holding the entire act (chapter 186, Laws of 1939) unconstitutional, is addressed to the question whether chapter 186, Laws of 1939, is unconstitutional in its entirety. Those two opinions obviate necessity of discussion in *Weyerhaeuser Timber Co. v. Cohn, post* p. 730, 101 P. (2d) 984, of the two questions there raised.

The pertinent exemption provisions of § 15, chapter 186, Laws of 1939, read as follows:

"Sec. 15. The distributor shall be exempt from the tax herein imposed upon the following: . . .

"(d) Withdrawal, sale or distribution of petroleum products by a distributor to any vessel engaged in foreign commerce.

"(e) Withdrawal, sale or distribution by a distributor of all petroleum products derived from the refining within this state of crude petroleum or crude oil.

"(f) Withdrawal, sale or distribution of petroleum products by a distributor to any person who is subject to tax under title V, chapter 180, Laws of 1935, and amendments thereto, and who purchases such petroleum products for the purpose of converting and who does actually convert the same into manufactured gas for distribution to the public."

The fourteenth amendment to the constitution of the United States provides that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Article I, § 12, of the state constitution provides:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal,

privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

True, the legislature has broad powers respecting the classification of property for excise tax purposes, yet the foregoing provisions of the Federal and state constitutions forbid an arbitrary classification. The legislature may constitutionally classify persons with reference to their business, occupation or inheritance, with a view of exaction from them of excise or privilege taxes differing in amount, or differing in that one class shall be taxed and another class shall be exempted, *so long as there may be* some *reasonable basis for such classification and* so long as *all in each class shall be taxed or exempted alike. State v. Hart,* 125 Wash. 520, 217 Pac. 45.

We stated in *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101, that, to comply with the equal protection clause of the Federal constitution and the privileges and immunities clause of our state constitution, legislation involving classification must apply alike to all persons within the designated class, and reasonable ground must exist for making a distinction between those who are brought within the class and those who are excluded therefrom.

In refusing to sustain a tax upon the gross receipts of corporations operating taxicabs, when the tax was not imposed upon individuals and partnerships engaged in the same business, the supreme court of the United States said in *Quaker City Cab Co. v. Pennsylvania,* 277 U. S. 389, 72 L. Ed. 927, 48 S. Ct. 553:

"The equal protection clause does not detract from the right of the State justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, 'but it does require that the classification be not arbitrary but based on a real and substantial dif-

ference having a reasonable relation to the subject of the particular legislation.' "

See, also, *Ohio Oil Co. v. Conway*, 281 U. S. 146, 74 L. Ed. 775, 50 S. Ct. 310.

■ The tax imposed by chapter 186, Laws of 1939, upon distributors at the rate of one-fourth cent for each gallon of petroleum products withdrawn, sold, distributed, or in any manner used by such distributor, amounts to approximately eleven per cent on the purchase price. Fuel oil and solid fuels such as coal, wood, sawdust, and coke, together with the mechanical contrivances incidental to their use such as oil burners, coal stokers, and sawdust burners, are marketed in competition with each other.

Chapter 186, Laws of 1939, violates the requirement that reasonable ground must exist for making a distinction between those who fall within the class and those who do not. No reasonable ground exists for making a distinction between those who fall within the classification of distributors of fuel subject to tax and distributors of fuel not subject to tax. That is, a distributor of fuel oil is required to pay a tax of approximately eleven per cent for the privilege of distributing fuel oil, while there is no comparable tax upon the distributors of coal, wood, sawdust, coke, gas and electricity.

All purchasers of fuel oil, as well as purchasers of coal, sawdust, wood and coke, are subjected to a compensating tax for the privilege of using in this state tangible personal property purchased at retail or produced or manufactured for commercial use. The result of the imposition of the fuel oil tax and the compensating tax is that users of fuel oil pay a tax of approximately thirteen per cent upon the fuel consumed by them, while users of the other fuels pay only the compensating tax of two per cent.

In *Pearson v. Seattle,* 199 Wash. 217, 90 P. (2d) 1020, we held that a city ordinance which imposed a license fee for revenue purposes, although ostensibly for regulatory purposes, on solid fuel dealers, while a similar license fee was not imposed on liquid fuel dealers, was unreasonable and discriminatory, therefore void, in that it singled out a particular business and imposed upon it special regulations and taxes when the ground had otherwise been fully covered by existing laws. (In that case, another ordinance was in force which applied alike to both liquid and solid fuel dealers.) We sustained the challenge that the city could not, as it attempted by that ordinance, impose such a revenue tax under the guise of a police regulation.

To impose the compensating tax upon all persons in this state for the privilege of using tangible personal property in the state, and then to single out a particular group (users of fuel oil) and impose an additional tax upon them for the same privilege, is indefensible on constitutional grounds. It is violative of the rule that reasonable ground must exist for making a distinction between those who fall within, and those excluded from, the classification for tax purposes. It is, we repeat, in defiance of the purpose of the privileges and immunities provision of the state constitution and contravenes the equal protection provision of the Federal constitution.

By subd. (d), § 15, chapter 186, Laws of 1939, Rem. Rev. Stat. (Sup.), § 8370-80m [P. C. § 7029k-35], subd. (d), the distributor shall be *exempted from* the *tax* upon withdrawal, sale or distribution of petroleum products to *any vessel engaged in foreign commerce.*

We do not find anywhere in the statute an extension of this exemption to railroads engaged in foreign commerce. Nor does the exemption extend to motor car-

riers or other persons or corporations engaged in foreign commerce. The legislature expressed, by this exemption provision, its intention to impose the tax upon railroads, motor carriers, and all other persons and corporations engaged in foreign commerce, but to exempt from the tax petroleum products withdrawn, sold, or distributed to vessels engaged in foreign commerce.

Plainly, the legislation does not apply alike to all persons within the designated class. There is no reasonable ground for making a distinction between those who fall within the class and those who do not. *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101; *Supply Laundry Co. v. Jenner,* 178 Wash. 72, 34 P. (2d) 363; *State v. Hart,* 125 Wash. 520, 217 Pac. 45.

Subdivision (d), § 15, chapter 186, Laws of 1939, is unconstitutional. By that exemption subdivision, our legislature attempted to grant a special privilege to foreign commerce by vessel and denied a like privilege to foreign commerce by railroad, by motor carrier, or by other conveyances. States have no such power respecting interstate commerce. *South Carolina State Highway Department v. Barnwell Bros.,* 303 U. S. 177, 82 L. Ed. 734, 58 S. Ct. 510; *Schechter Poultry Corp. v. United States,* 295 U. S. 495, 79 L. Ed. 1570, 55 S. Ct. 837, 97 A. L. R. 947; *International Paper Co. v. Massachusetts,* 246 U. S. 135, 62 L. Ed. 624, 38 S. Ct. 292, Ann. Cas. 1918C, 617; *Webber v. Virginia,* 103 U. S. 344, 26 L. Ed. 565; *Baldwin v. Seelig,* 294 U. S. 511, 79 L. Ed. 1032, 55 S. Ct. 497, 101 A. L. R. 55.

■ Under § 1, chapter 186, Laws of 1939, p. 581, Rem. Rev. Stat. (Sup.), § 8370-78a [P. C. § 7029k-21], a tax is imposed upon distributors, as defined in § 2 of the act, p. 581, Rem. Rev. Stat. (Sup.), § 8370-79a [P. C. § 7029k-22], for each gallon of petroleum products withdrawn, sold, distributed, or *in any manner used*

*by such distributors* within the state of Washington, except as expressly exempted by § 15 of the act.

Section 2 of the act includes within the definition of distributor those who refine within the state and those who acquire from those who refine within the state. Under subd. (e), § 15, chapter 186, Laws of 1939, all persons who refine within the state and all persons who acquire from those who refine within the state are exempt from taxation on locally refined petroleum products withdrawn, sold, or distributed by such persons. It would follow, logically, that the consumers who purchase such products from retail distributors would not be required to pay a tax on locally refined petroleum products they use, as no tax was paid thereon which could be passed along to the consumers.

Locally refined products *used* by distributors are not exempted from taxation by subd. (e), § 15, chapter 186, Laws of 1939. That is, under this statute, the legislature selected from the group composed of all users of locally refined petroleum products a certain portion, which it named "distributors," and imposed upon those within the selected group a use tax and exempted from that tax all other users of locally refined products. The exemption constitutes, also, an invalid discrimination in favor of local refineries and against distributors in petroleum products refined in other states.

The exemption under subd. (e), § 15, chapter 186, Laws of 1939, is void. *Quaker City Cab Co. v. Pennsylvania*, 277 U. S. 389, 72 L. Ed. 927, 48 S. Ct. 553; *Ohio Oil Co. v. Conway*, 281 U. S. 146, 74 L. Ed. 775, 50 S. Ct. 310; *State v. Robinson Co.*, 84 Wash. 246, 146 Pac. 628; *State v. Hart*, 125 Wash. 520, 217 Pac. 45; *State ex rel. Bacich v. Huse*, 187 Wash. 75, 59 P. (2d) 1101; *Chalker v. Birmingham & N. W. R. Co.*, 249 U. S. 522,

63 L. Ed. 748, 39 S. Ct. 366; *Hale v. Bimco Trading Co.,* 306 U. S. 375, 83 L. Ed. 771, 59 S. Ct. 526.

The attorney general concurs in the view that subd. (e), *supra,* is unconstitutional, as disclosed by the following on page nineteen of appellant's brief:

"So far as this case is concerned, sub-section (e) of section 15 of the act, undertaking to exempt from the excise tax 'distributors' of products derived from refining within this state of crude petroleum or crude oil, in our opinion, discriminates in favor of Washington refineries and against distributors dealing in petroleum products refined in other states, imported into this state and here sold and such discrimination is violative of the equal protection clause of the 14th amendment to the constitution of the United States and section 12 of Article I of the constitution of the state of Washington."

■ Subdivision (f), § 15, chapter 186, Laws of 1939, Rem. Rev. Stat. (Sup.), § 8370-80m [P. C. § 7029k-35] subd. (f), under which the Seattle Gas Company is exempted from the fuel oil tax is unconstitutional.

The withdrawal, sale, or distribution of fuel oil by a distributor to any person who pays the public utility tax and uses the fuel oil to manufacture gas for distribution to the public is exempted by subd. (f), *supra,* from the tax imposed by the fuel oil statute (chapter 186, Laws of 1939).

There is no like exemption to other public utility companies which also pay a public utility tax and use the fuel oil to manufacture commodities or produce services for the use of the public. To state the facts is to declare the rule applicable thereto. The classification is so obviously, glaringly, arbitrary, capricious, and unreasonable that it seems hardly necessary to do more than invoke the equal protection clause of the fourteenth amendment to the Federal constitution and the privileges and immunities clause of our state consti-

tution to strike down this extension of special privilege to one public utility and denial to other public utilities of a like privilege of exemption. The exemption does not apply alike to all persons within a designated class, and no reasonable ground is shown for making a distinction between those who fall within the class and those who are outside the class. *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101.

It is not a sound argument that the gas companies are not within the class designated as distributors upon whom the tax is imposed because they pay the public utility tax and they convert the petroleum products into a manufactured product (gas) for distribution to the public. True, the gas industry converts fuel oil into gas for the use of the public. The railway companies convert the fuel oil into transportation for the use of the public. Light and power companies operating in this state use fuel oil in generating units (steam plants) operated to manufacture electrical energy for light, heat and power. Water carriers use fuel oil to produce transportation by boats of certain capacity operating upon the waters within this state. Certain highway transportation companies use diesel oil, which is a partially refined petroleum product, to manufacture transportation by motor vehicle. Other public utilities also pay the public utility tax. Whether they pay more or less than the gas company, is not material. The payment of the public utility tax is not a valid ground on which to base the exemption of the gas companies from the tax.

All of the public utility companies mentioned above consume the fuel oil—just like the gas company consumes the fuel oil—in producing a service, a commodity, or a product, for the use of the public. It follows that the fact that the fuel oil is transmuted by the gas companies into manufactured gas is not a sufficient

reason for the exemption of gas companies from the classification of those who are required to pay the fuel oil tax under chapter 186, Laws of 1939.

 Chapter 186, Laws of 1939, imposes a tax upon any person who acquires within the state petroleum products from any person importing same into the state, and upon any person who imports into the state and withdraws, sells, distributes, or in any manner uses the products within this state. The statute further requires such persons to pay a fee, file a surety bond, obtain a license, etc., as distributors. Those conditions constitute an unlawful burden on interstate commerce, hence unconstitutional. *Bowman v. Continental Oil Co.*, 256 U. S. 642, 65 L. Ed. 1139, 41 S. Ct. 606; *State v. Yetter*, 5 S. E. (2d) (S. C.) 291; *Crutcher v. Kentucky*, 141 U. S. 47, 35 L. Ed. 649, 11 S. Ct. 851; *Gwin, White & Prince, Inc. v. Henneford*, 305 U. S. 434, 83 L. Ed. 272, 59 S. Ct. 325; *Western Union Tel. Co. v. Kansas*, 216 U. S. 1, 54 L. Ed. 355, 30 S. Ct. 190; *Graves v. Texas Co.*, 298 U. S. 393, 80 L. Ed. 1236, 56 S. Ct. 818; *Paramount Pictures Distributing Co. v. Henneford*, 184 Wash. 376, 51 P. (2d) 385.

 Next in order is the question whether, in view of § 21 (severability clause), chapter 186, Laws of 1939, p. 598, Rem. Rev. Stat. (Sup.), § 8370-80s [P. C. § 7029k-40], the invalidity of the exemptions in § 15, subds. (d), (e), and (f) of the act renders the act void as a whole.

If chapter 186, *supra*, is sustained when we invalidate subd. (d), a number of persons engaged in foreign commerce by vessel, which persons the legislature declared were not to be taxed, will become subject to the tax. If we strike subd. (e) and sustain the act sans this subdivision, two refineries located within this state which the legislature said were to be exempt, will be required to pay the tax. In the event that we declared

subd. (f) void and held that the remainder of the act was constitutional, all of the gas companies in the state which the legislature definitely, specifically, emphatically, stated were not to be taxed, would be rendered subject to the tax.

When chapter 186, Laws of 1939, was passed by the legislature and signed by the governor, a tax was imposed by that statute upon every distributor of petroleum products except those exempted by § 15. It would be contrary to the expressed intent of the legislature for us to sustain the act after striking down § 15, subds. (d), (e), and (f), and impose upon the persons included within those exemption clauses the distributors whom the legislature said were not to be taxed. Section 21, chapter 186, Laws of 1939, reads as follows:

"If any section, sub-section, clause, sentence or phrase of this act, including those setting forth any penalty, exemption or definition, is for any reason held to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this act, and the Legislature hereby declares it would have enacted this act if such section, sub-section, clause, sentence or phrase were omitted."

In *Jensen v. Henneford*, 185 Wash. 209, 53 P. (2d) 607, we held that exemptions creating unconstitutional discriminations in the statute will not be stricken by this court and the remainder enforced, even if the act contains a severability clause and is an important revenue measure, if the effect of so doing is to broaden the scope of the act so as to extend its provisions to a class of persons the legislature has said were not to be included. In that case, we held the personal net income tax law of 1935 (Laws of 1935, chapter 178, p. 660) was unconstitutional in its entirety, despite the argument of the attorney general that the sections creating lack of uniformity could be stricken and the remainder of the statute enforced because of the pres-

ence in the act of a severability clause to the effect that, if any section, clause, or part of the act were adjudged invalid or unconstitutional, such adjudication should not affect the remaining portions of the statute.

Section 2 of the income tax statute, p. 661, is analogous to § 1, chapter 186, Laws of 1939, and provided for the levy, collection, and payment to the state for each income year by every resident of this state for the privilege of receiving income within this state, a normal tax with respect to his income at the rate of three per cent of the amount of the net income in excess of the credits against net income as provided in §§ 9 and 10 of the act, pp. 670, 671. We held that §§ 9 and 10 must be read as a part of § 2(a), p. 661. By § 10 a married man was allowed a higher credit against the net income than a single man, which destroyed the uniformity of the act. *Jensen v. Henneford,* 185 Wash. 209, 53 P. (2d) 607, is controlling. It is not distinguishable in principle from the case at bar. In the course of our opinion in that case, we said:

"The question then arises whether the objectionable features of the normal tax may be eliminated, under the provisions of § 70, and still leave a complete and workable act. In our opinion, any process of elimination exercised under § 70 would destroy the act entirely. This would be true whether § 10 be considered by itself or read as part of § 2(a).

"If, considering § 10 by itself, we eliminate the credit allowed to single persons, it would not remedy the situation but, manifestly, would make it worse. If, on the other hand, we eliminate the credits allowed to married persons and those having dependents, the same result would follow. If we eliminate the entire section, then we will not merely have taken something from the act, but will have added something to it, because the act would then operate on all net incomes of whatever amount. But the legislature never contemplated, nor intended to accomplish, such a result. The wording of the section shows a contrary intention.

"If we consider § 10 as part and parcel of § 2 (a), as it should be, then we face an even more difficult situation. It would be impossible to translate § 10 into § 2 (a) in such a way that any part of it could be eliminated without completely mutilating the latter section. We would have to clip sentences midway in their expression, or else sever bodily from the section the words 'in excess of the credits against net income as provided in sections 9 and 10.' In either event, we would, as stated above, effect a result that the legislature never contemplated nor intended to accomplish. In short, any attempt at elimination would involve a complete reconstruction, indeed a re-creation, of the act and would result in imputing to the legislature an intention which the present wording of the act does not sustain. Such a process indulged in, would not be judicial, but would be legislative, and would assume a power that we are not permitted to exercise. *Hill v. Wallace*, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822; *Williams v. Standard Oil Co.*, 278 U. S. 235, 49 S. Ct. 115, 73 L. Ed. 287, 60 A. L. R. 596; *Eliasberg Bros. Mercantile Co. v. Grimes*, 204 Ala. 492, 86 So. 56, 11 A. L. R. 300."

In *Hill v. Wallace,* 259 U. S. 44, 66 L. Ed. 822, 42 S. Ct. 453, the constitutionality of a Federal taxing act (42 Stat. 187) entitled "An Act Taxing contracts for the sale of grain for future delivery . . . and for other purposes." was challenged. Section 11 of that act (42 Stat. 191) contained a severability clause. In holding that that clause did not give the court power to rewrite an invalid statute so as to make it enforcible, the supreme court of the United States said:

"Section 11 does not intend the court to dissect an unconstitutional measure and reframe a valid one out of it by inserting limitations it does not contain. This is legislative work beyond the power and function of the court . . . .

"It (severability clause) does not give the court power to amend the act."

If § 15, subds. (d), (e), and (f) were stricken and the remaining provisions of the act enforced, including the penalties prescribed by the statute, then the scope of chapter 186, Laws of 1939, would be extended to make that a crime which the legislature said was not to be a crime.

Distributors to vessels engaged in foreign commerce and to local gas companies and to local refiners, merely by the conduct of their businesses without payment of the tax, would be made liable to criminal prosecutions, fines and imprisonment under § 16 of the act, p. 596, Rem. Rev. Stat. (Sup.), § 8370-80n [P. C. § 7029k-36], although the legislature declared in § 15 that they were not to be taxed and therefore not to be liable to such punishment for failure to pay taxes.

In *State v. Gantz*, 124 La. 535, 50 So. 524, 24 L. R. A. (N. S.) 1072, the supreme court of Louisiana, in holding that an entire act was unconstitutional because of a discriminatory exemption, said,

"We will now discuss whether the illegal exemption, because illegally discriminative, vitiates the whole statute.

"It does evidently. It is a criminal statute, as it defines a crime.

"By striking out the exemption as unconstitutional, it leaves subject to criminal prosecution those the Legislature expressly intended should be exempt.

"As to them it would be making that a crime which was never intended should be. The exemption renders it impossible to enforce the legislative will."

The rule is summarized as follows in 11 Am. Jur. 855, § 161,

"One important class of cases in which questions as to the severability of valid and invalid portions of an act and the determination of the legislative intent are involved consists of statutes containing invalid exceptions or provisos. The general rule is that if such a proviso operates to limit the scope of the act in such

a manner that by striking out the proviso, the remainder of the statute would have a broader scope either as to subject or territory, then the whole act is invalid, because such extended operation would not be in accordance with the legislative intent."

It is next argued that, if chapter 186, Laws of 1939, is unconstitutional, the fuel oil tax act (title XI, chapter 180, Laws of 1935, p. 749, as amended by chapter 116, Laws of 1937, p. 459) is restored to full force and effect, and that the trial court should have entered judgment in favor of appellant for the amount of tax due under the 1937 act.

That question is not in this case. The cause was tried on the theory that the state was entitled to recover under the provisions of chapter 186, Laws of 1939. The question, which was not presented in the trial court, of the revival of the prior fuel oil tax statute, cannot for the first time be raised in this court.

There is also the factor which must be considered of proof of how many gallons of fuel oil respondent refinery sold and distributed during May, 1939, for which it might be liable to taxation under chapter 116, Laws of 1937.

■ The contention of appellant that the railway company, which raised the constitutional question in this case, should not have been permitted to intervene in this action, is without merit. Disregarding the question whether appellant waived its right to object to the intervention of the railway company, the statute (Rem. Rev. Stat., § 202 [P. C. § 8280]) is a sufficient answer to the argument of appellant. That section of the statute permits any person to intervene in an action who has an interest in the matter in litigation, in the success of either party, or an interest against both. The railway company, under its contract with the Inland Empire Refineries, Incorporated, was required to

pay, in addition to the stated price per barrel for fuel oil, any tax lawfully found due.

The judgment is affirmed.

STEINERT, SIMPSON, BEALS, GERAGHTY, ROBINSON, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—I dissent. As I view it, there is only one ground of the attack on the constitutionality of chapter 186, Laws of 1939, that has a semblance of validity. That is the exemption allowed under § 15, subd. (e), upon the "withdrawal, sale or distribution by a distributor of all petroleum products *derived from the refining within this state* of crude petroleum or crude oil." (Italics mine.) Obviously, this is an unconstitutional discrimination in favor of persons and corporations engaged in refining petroleum and crude oil in this state. But it does not follow that the entire act must fall. For, by § 21, it is provided:

"If any section, sub-section, clause, sentence or phrase of this act, including those setting forth any penalty, exemption or definition, is for any reason held to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this act, and the Legislature hereby declares it would have enacted this act if such section, sub-section, clause sentence or phrase were omitted."

By this section, the legislature declared in language as plain as English can express that it was its purpose to lay the tax upon all distributors if the exemption defined in § 15, subd. (e), were unconstitutional. In other words, the exemption falls and the act stands as though the exemption had been omitted by the legislature itself. *Utah Power & Light Co. v. Pfost,* 286 U. S. 165, 76 L. Ed. 1038, 52 S. Ct. 548; *Bacon Service Corp. v. Huss,* 199 Cal. 21, 248 Pac. 235; *Ex parte*

*Schmolke,* 199 Cal. 42, 248 Pac. 244; *Di Lustro v. Penton,* 106 Fla. 160, 142 So. 898; *Gulfport Building & Loan Ass'n v. Gulfport,* 155 Miss. 498, 124 So. 658; *Boyd v. State,* 217 Wis. 149, 258 N. W. 330; *State ex rel. Attorney General v. Tittmann,* 42 N. M. 76, 75 P. (2d) 701; *Reynolds Metal Co. v. Martin,* 269 Ky. 378, 107 S. W. (2d) 251; *Ingels v. Riley,* 5 Cal. (2d) 154, 53 P. (2d) 939, 103 A. L. R. 1; *Johnson v. Long Furniture Co.,* 113 Miss. 373, 74 So. 283; *Smith v. Wilkins,* 164 N. C. 135, 80 S. E. 168; *Adams v. Standard Oil Co.,* 97 Miss. 879, 53 So. 692; *People v. Stokes,* 281 Ill. 159, 118 N. E. 87; *Fairley v. Duluth,* 150 Minn. 374, 185 N. W. 390, 32 A. L. R. 1258; *State ex rel. Dillon v. Braxton County Court,* 60 W. Va. 339, 55 S. E. 382; *Fox's Appeal,* 112 Pa. 337, 4 Atl. 149.

In the first case above cited, an act was under consideration which provided for an excise tax on the production of electric energy for sale. Power furnished for pumping water for irrigation purposes was exempted from the operation of the act. The act contained a saving clause similar to § 21 of chapter 186, Laws of 1939. Addressing itself to the exemption and the effect of its invalidity upon the act as a whole, the court said:

"A further contention is that § 5 is an inseparable part of the act, and being unconstitutional, the entire act must fall with it. . . .

"The act itself (§ 11) provides that an adjudication that any provision of the act is unconstitutional shall not affect the validity of the act as a whole, or of any other provision or section thereof. While this declaration is but an aid to interpretation and not an inexorable command . . . it has the effect of reversing the common law presumption, that the legislature intends an act to be effective as an entirety, by putting in its place the opposite presumption of divisibility; and this presumption must be overcome by considerations that make evident the inseparability of the pro-

visions or the clear probability that the legislature would not have been satisfied with the statute unless it had included the invalid part. . . .

"It fairly may be assumed that the Idaho Legislature, in making this declaration, had in mind every provision of the act, including § 5. The primary object of the statute, under review, plainly, is to raise revenue. The exemption made by § 5 and the provisions for carrying that exemption into effect are secondary. We find no warrant for concluding that the legislature would have been content to sacrifice an important revenue statute in the event that relief from its burdens in respect of particular individuals should become ineffective. On the contrary, it seems entirely reasonable to suppose that if the legislature had expressed itself specifically in respect of the matter, it would have declared that the tax, being the vital aim of the act, was to be preserved even though the specified exemptions should fall for lack of validity."

Of a taxing act exempting "notes or bills for work or labor done," it was said in *Fox's Appeal, supra*:

"The exception . . . is void, under this provision, and drops out of the Act of 1885. The exception falls, but the Act stands. It will be the duty of the assessors to assess and return such bills or notes the same as other moneyed securities in the hands of individuals."

MAIN, J., concurs with BLAKE, C. J.