(Nos. 23997, 23998.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EVELYN L. REDFIELD, Plaintiff in Error.

*Opinion filed June 16, 1937—Rehearing denied October 6, 1937.*

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (JO-
SEPH B. FLEMING, EDWARD C. CALDWELL, MANLY K.
HUNT, and GEORGES DAPPLES, of counsel,) for plaintiff in
error.

OTTO KERNER, Attorney General, (EARL B. DICKERSON,
of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Plaintiff in error (hereinafter referred to as defend-
ant) is an employment agent licensed by the Department of
Labor of this State. Defendant was convicted in the mu-
nicipal court of Chicago in separate prosecutions for two
separate violations of paragraph 11 of section 5 of "An
act to revise the law in relation to private employment
agencies and to repeal an act therein named," approved July
10, 1935. (State Bar Stat. 1935, chap. 48, p. 1570.) That
portion of section 5 involved here provides, "No such
licensed person shall require any person who has applied
for and obtained a position through such licensed person
to sign any note authorizing a confession of judgment for
payment of any fees or require any applicant for a position
to sell, transfer or assign any salary or wages due the ap-
plicant or to become due from his employer." Section 12
of the act makes a violation of its provisions punishable by
a fine not exceeding $25, and, in default of payment, the
offender may be committed to the county jail or house of

correction for a period not exceeding thirty days. The defendant sued out a writ of error from this court in each case and, on motion here, they have been consolidated for hearing.

The causes were heard on a stipulation of facts, from which it appears that defendant obtained a position for an applicant who was unable to pay cash for her services or to meet defendant's credit requirements. · Defendant required the applicant to sign a promissory note authorizing a confession of judgment, and also to assign a portion of her wages due or to become due from her employer, as security for defendant's fee. Defendant charges that the portion of section 5, above quoted, under which she was prosecuted, is an unreasonable exercise of the police power and a violation of her rights under section 2 of article 2 and section 22 of article 4 of the constitution of Illinois, and of section 1 of the fourteenth amendment to the constitution of the United States.

Judgment notes and wage assignments are not peculiar to employment agencies. Promissory notes containing a warrant of attorney authorizing a confession of judgment against the maker have long been used in financial transactions in this State. They are the conventional form frequently required by banks of their borrowers. Common usage in all kinds of businesses, as evidence of credit extended, has established them as currently prevailing in everyday credit dealings. The legitimacy of the confession of judgment clauses in contracts is recognized by our Civil Practice act. (State Bar Stat. 1935, chap. 110, sec. 50, par. 5.) It is the same with wage assignments. They are a customary form of security required of an employee seeking credit either from pawnbrokers, installment-plan merchants, wage-loan corporations, small-loan companies, so-called "loan sharks," and others. Express statutory sanction is given wage-loan corporations (State Bar Stat. 1935, chap. 32, pars. 478, 480,) and to small-loan companies

(State Bar Stat. 1935, chap. 74, par. 50,) to take wage assignments as security for money lent. Their legality has long been recognized in this State. (*State Street Furniture Co.* v. *Armour & Co.* 345 Ill. 160.) Such contracts are not against public policy and are valid if made for a valuable consideration and untainted with fraud. *Monarch Discount Co.* v. *Chesapeake and Ohio Railway Co.* 285 Ill. 233.

No legal barrier has been erected by legislative enactment against one requiring either a judgment note, an assignment of wages, or both, from one seeking credit either for services rendered, for merchandise bought or for a loan, save by the act here in question. Such right is forbidden solely to a licensed employment agent as security for his unpaid fee. By the prohibition contained in the act an employment agent is denied the right to demand two different forms of security for the service he renders that, nevertheless, may lawfully be exacted by every person in every other profession or business. The defense of such a discriminatory classification must find shelter, if any, under the wings of the police power. To do so there must be a rational basis for the distinction. The legislative acts dependent for their validity upon the exercise of the police power are limited to those having reference to the comfort, health, safety or welfare of society. Enactments under the pretense of an exercise of the police power which deprive a person of a constitutional right cannot be sustained. It is established that the business of conducting an employment agency is both lawful and beneficial. (*Mathews* v. *People,* 202 Ill. 389; *Price* v. *People,* 193 id. 114; *Adams* v. *Tanner,* 244 U. S. 590, 61 L. ed. 1336.) An employment agency is not inherently immoral or dangerous to the public welfare. The service rendered in acting as the paid representative of another to find a position in which to earn an honest living is "useful, commendable and in great demand." (*Adams* v. *Tanner, supra.*) There is nothing in the nature of the business which in any way threatens or

endangers the public health, safety or morals. *Ex parte Dickey*, 144 Cal. 234, 77 Pac. 924, 66 L. R. A. 928.

The Supreme Court of the United States has declared that an employment agency is essentially a private business and held unconstitutional a State statute attempting to fix or limit prices for its services that may be charged by such agency. *Ribnik* v. *McBride*, 277 U. S. 350, 72 L. ed. 913.

The Supreme Court of Washington held unconstitutional an ordinance which singled out employment agents and made it unlawful for them, alone, to make a wilful misrepresentation to a person seeking employment and to take a fee for obtaining such employment. Among other things the opinion in that case declared, "The vice of the section under discussion lies in this, that it makes an act criminal in one who may be engaged in a lawful business, while the act committed under like circumstances by another might not be so. * * * From the very nature of things there can be no dissimilarity of condition or situation between the employment agent who indulges in a false pretense and any other person who resorts to deceit or fraudulent representation to accomplish a wayward purpose. * * * Those engaged in a business lawful and orderly in itself, although subject to license and regulation, cannot be made a class upon which a penal statute shall operate to the exclusion of others, for the crime defined is not peculiar to the business of employment agencies, but common to all and to be sustained, must include within its terms all who may likewise be guilty. * * * It is the act with which the law is concerned, rather than the business in which one may be engaged when he commits it. * * * It makes the act of one engaged in a particular business criminal, while the same act committed by another in a different business may go unchallenged by the city." *City of Spokane* v. *Macho*, 51 Wash. 322, 98 Pac. 755.

An Illinois statute of 1899 made it unlawful for any person doing business in this State to induce workmen to

change from one place to another in this State or to bring workmen into the State by means of false representations concerning the character of the work, the amount of compensation, the conditions of employment or the existence of any labor trouble. This statute was found unconstitutional as an unlawful classification in *Josma* v. *Western Steel Car and Foundry Co.* 249 Ill. 508.

If judgment notes and wage assignments may be placed upon a different footing than other contracts it can be justified only by legislation sufficiently comprehensive to include all cases within the evils sought to be remedied. In this case the questioned statute tends to draw an unwarranted distinction between employment agencies and all other forms of lawful endeavor. If the defendant here is denied the ·right to contract and acquire property in the manner which she has heretofore enjoyed under the law and which all those engaged in any other lawful occupation are still allowed to enjoy, it is clear that she is deprived of both liberty' and property to the extent that she is refused the right to contract. (*Frorer* v. *People,* 141 Ill. 171; *Braceville Coal Co.* v. *People,* 147 id. 66.) This right of contract, common to all lawful occupations, is an asset of the defendant and is a part of the property in the enjoyment of which she is guaranteed protection by the constitution. Arbitrarily to take from her this right by a law not applicable to those in other occupations, cannot legally be supported. The vice of the statute is, that it makes the act of one engaged in a particular business criminal, while the same act may lawfully be committed by another in a different business.

That portion of the section of the statute under which the defendant was prosecuted is subject to the constitutional infirmities charged against it, and is void.

The judgments of the municipal court of Chicago are reversed.

*Judgments reversed.*