**In re Eugene L. WEATHERSPOON, Debtor.**

**In re Louis J. & Betty A. RAMIREZ, Debtors.**

**Bankruptcy Nos. 89 B 01074, 88 B 20052.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 22, 1989.

E. Paul Rustin, Ltd., Chicago, Ill., for Weatherspoon.

Michael J. Kalkowski, Office of Lawrence Friedman, Chicago, Ill., for Citicorp Acceptance.

Diane Peterson, First Nat. Bank of Chicago, Chicago, Ill., for 1st Nat. Bank.

Joseph A. Baldi, Rosenthal & Schanfield, Chicago, Ill., former Bankruptcy Trustee.

Jeffrey F. Kohan, Zalutsky, Pinski & DiGiacomo, Chicago, Ill., for Louis J. and Betty A. Ramirez.

Michael J. Kalkowski, Chicago, Ill., for Northwest Memorial Hosp.

William Grabscheid, Arthur Young & Associates, Chicago, Ill., for Bankruptcy Estate.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtors in these two Chapter 7 cases brought what they thought were routine motions to avoid judicial liens under section 522(f)(1) of the United States Bankruptcy Code. That section authorizes the avoidance of judicial liens that would impair a debtor's right to claim property as exempt. Such motions are usually granted without objection. The two creditors who hold the liens here (both represented by the same law firm) did object to these motions, believing that it is time for a change in the law. Notwithstanding the vigorous arguments of the creditors' counsel, this Court will grant the motions to avoid the liens.

## FACTS

The facts in both contested matters are substantially similar.[1] The judgment creditors here, Citicorp Acceptance in the *Weatherspoon* matter and Northwest Memorial Hospital in the *Ramirez* matter, hold judgments against the Debtors. Before these bankruptcy cases were commenced, the judgment creditors caused wage deduction summonses to be served upon the Debtors' employers. In addition, Citicorp caused a citation to discover assets to be served on the First National Bank of Chicago, where Mr. Weatherspoon maintained a checking account. The Debtors' employers duly withheld portions of the Debtors' wages pursuant to the wage deduction summonses.[2] The bank also withheld funds from Mr. Weatherspoon's checking account pursuant to the citation to discover assets.[3]

After the citation and the summonses had been served and funds withheld, both Debtors filed voluntary petitions under Chapter 7 of the Bankruptcy Code. The Debtors then filed motions to avoid the liens imposed on their wages and on the checking account by the post-judgment collection processes. The Debtors contend, and the creditors do not deny, that, were it not for these liens, they could claim the funds as exempt. Thus, if the motions are granted, the Debtors will get the funds now held by the employers and bank to facilitate their "fresh start." If the motions are denied, the funds will go to the judgment creditors in partial satisfaction of debts that will otherwise be discharged.

---

1. The contested matters are consolidated only for purposes of this memorandum opinion. Separate orders will be entered.

2. Mr. Weatherspoon's employer withheld $196.00 and the Ramirez' employers withheld $322.00. Although the amounts in these cases are small, motions like these are frequent. In the aggregate, creditors would achieve a considerable advantage in their endless tug-of-war with consumer debtors if the creditors prevailed on the issues presented here. That is especially true because funds salvaged under section 522(f) are often used to pay the legal fees incurred in the chapter 7 cases.

3. The Debtor's motion for turnover states that $310.00 has been withheld by First Chicago. However, the Debtor's reply memorandum admits the facts stated in Citicorp's responding memorandum which sets the amount withheld by First Chicago at $244.97. The difference is not material.

## DISCUSSION

The issues here concern the application of 11 U.S.C. § 522(f)(1), which authorizes the Debtors to avoid "judicial liens" that impair exemptions. That section provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; ...

The judgment creditors argue that the liens created by the post-judgment collection process are not judicial liens, but statutory liens, and consequently are unavoidable under section 522(f)(1). The judgment creditors also argue that service of the wage deduction summonses and the citation to discover assets worked an immediate transfer of the affected funds that divested the Debtors of all interest in those funds. Since lien avoidance under section 522(f)(1) requires that the Debtors had some interest in the encumbered property when the bankruptcy case was commenced. *See In re Johnson*, 53 B.R. 919, 922 (Bankr.N.D.Ill.1985), the judgment creditors contend that the alleged absolute transfers upon service of the summonses and the citation render section 522(f)(1) inapplicable. This Court rejects both arguments.

### 1. JUDICIAL VS. STATUTORY LIEN

■ The judgment creditors correctly state that "the garnishment process [in Illinois] is purely a creature of statute." *Taylor v. Taylor*, 44 Ill.2d 139, 144, 254 N.E.2d 445, 448 (1969); *Roth v. Kaptowsky*, 401 Ill. 424, 82 N.E.2d 661 (1948). That does not mean, however, that the lien on garnished funds is a "statutory lien" rather than a "judicial lien" for purposes of section 522(f)(1) of the Bankruptcy Code.

Section 101(32) of the Bankruptcy Code provides:

"judicial lien" means lien obtained by judgment, levy, sequestration or other legal or equitable process or proceeding.

By contrast, section 101(47) of the Bankruptcy Code (emphasis added) provides:

"statutory lien" means lien arising *solely by force of a statute on specified circumstances or conditions*, or lien of distress for rent, whether or not statutory, *but does not include* security interest or *judicial lien, whether or not such interest or lien is provided by or is dependent on a statute* and whether or not such interest or lien is made fully effective by statute.

Neither the lien on wages nor the alleged lien on the bank account arose *solely* by force of a statute. The statutes merely authorized the liens that arose through the judgment process. Moreover, the judgment creditors' liens fall squarely within the exceptions to a "statutory lien" under the Code. A "statutory lien" does not include a "judicial lien, whether or not such ... lien is provided by or dependent on a statute." The judgment creditors' garnishment and citation liens are judicial liens because they arise by virtue of the judicial proceedings and the service of process on the employers and the bank. Without the judicial proceedings and service of process, the judgment creditors' liens would not exist. That distinguishes judicial liens from statutory liens. "A statutory lien is only one that arises *automatically*, and is not based on ... judicial action." H.R.Rep. No. 595, 95th Cong, 1st Sess. 314 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), U.S.Code Cong. & Admin.News 5787, 5813, 6271 (emphasis added). Examples of statutory liens which arise automatically are tax liens, mechanics' liens, and warehousemen's liens, none of which require prior judicial proceedings. *Id.;* Colliers on Bankruptcy, ¶ 101.47 at 101–112 (15th Ed.1988).

The wages that are the object of these contested matters are held pursuant to Ill. Rev.Stat. ch. 110 Article XII, Part 8. Section 12–805 establishes the procedures for issuance of a summons in a wage deduction proceeding. A judgment creditor must file an affidavit and interrogatories with the Clerk of the Court, who will then issue a summons against the judgment debtor's employer. That section also requires that "a copy of the underlying judgment or

certification by the Clerk of the Court which entered the judgment, or by the attorney for the judgment creditor, setting forth the amount of the judgment, the name of the Court and the number of the case" shall accompany the summons. Ill. Rev.Stat. ch. 110 § 12–805.

Section 12–808 provides that "[t]he judgment or balance due thereon is a lien on wages due at the time of the service of summons ... except that such lien ... shall terminate ... if the underlying judgment is vacated or modified." Ill.Rev.Stat. ch. 110 § 12–808. A creditor's use of the collection mechanism established by Article XII, Part 8 is, therefore, contingent on the existence of an underlying judgment. Consequently, although the wage deduction process in Illinois is purely a creature of statute, the lien created by that process does not arise *solely* by force of the statute. Rather, the lien arises under the statute because there is an existing judgment and a summons is served.

The funds in the First Chicago checking account are held pursuant to Ill.Rev.Stat. ch. 110 § 2–1402, which authorizes supplementary post-judgment proceedings, initiated by service of a citation to discover assets, for the purpose of enforcing a judgment. There has been considerable debate about whether mere service of a citation to discover assets imposes a lien of any sort. Many recent federal cases hold that the citation proceeding does impose a lien on discovered assets. *General Telephone Co. of Illinois v. Robinson*, 545 F.Supp. 788, 797 (C.D.Ill.1982); *In re Fowler*, 90 B.R. 375, 377 (Bankr.N.D.Ill.1988); *In re Einoder*, 55 B.R. 319, 324 (Bankr.N.D.Ill.1985); *In re Foluke*, 38 B.R. 298, 301 (Bankr.N.D. Ill.1984); *In re Lapiana*, 31 B.R. 738, 742 (Bankr.N.D.Ill.1983). The district court in *Barnett v. Stern*, 93 B.R. 962, 975, n. 5 (N.D.Ill.1988), however, convincingly argues that the initiation of a citation proceeding does not create a lien. The parties here simply assume that a lien has been created, arguing only about the effect of that lien. This Court need not determine whether a lien was created when a citation was served, since there are other grounds on which to decide this dispute. The Court will therefore assume for purposes of this opinion that a lien was imposed on Mr. Weatherspoon's bank account when the supplementary proceedings were commenced by service of the citation.

Making that assumption, however, the citation lien, like the lien created by service of a wage deduction summons, is dependent upon the prior existence of a judgment and the service of process (i.e., the citation). Ill.Rev.Stat. ch. 110 § 2–1402 (1985). Therefore, like the wage deduction lien, it is authorized by statute but arises by virtue of the judgment-collection process.

All cases that have addressed the matter are in accord that liens under the citation or wage deduction statutes are judicial liens. *See, e.g., In re Bryant*, 58 B.R. 144, 146 (N.D.Ill.1986) ("The [wage] garnishment is a judicial lien according to Illinois law"); *Johnson*, 53 B.R. at 922 ("A [wage] garnishment lien is a judicial lien"); *Einoder*, 55 B.R. at 324 ("Illinois law clearly expresses the view that the initiation of a citation proceeding creates a judicial lien ...."); *Foluke*, 38 B.R. at 301 (judicial lien is created by issuance of a citation to discover assets). Accordingly, the liens imposed on the bank account (again, assuming there is any kind of a lien on the bank account) and the Debtors' wages are judicial liens that may be avoided by section 522(f)(1) of the Bankruptcy Code, so long as the Debtors retained an interest in the encumbered funds when their bankruptcy cases began.

### 2. "TRANSFER" OF DEBTOR'S INTEREST

■ The judgment creditors next argue that service of the wage deduction summonses and initiation of the citation proceedings resulted in "transfers" that divested the Debtors of all interest in the portions of future wages subject to deduction and the bank account. Since the summonses and citation were served before the Debtors filed their petitions, the judgment creditors contend that those funds never became part of the bankruptcy estates and therefore may not be claimed as exempt.

If accepted, that argument would prevent the Debtors' use of section 522(f)(1) to avoid the liens for two reasons. First, section 522(f) allows a debtor to avoid a judicial lien "to the extent that such lien impairs an exemption to which the debtor would have been entitled." 11 U.S.C. § 522(f). An exemption is taken "from property of the estate." 11 U.S.C. § 522(b). If the withheld funds never became property of the estate because they were absolutely transferred before the bankruptcy petitions were filed, the Debtors could not claim them as exempt. Since no exemption would be impaired, section 522(f)(1) would be unavailable. Second, section 522(f) provides for the avoidance of "the fixing of a lien on an interest of the debtor in property." Therefore, the debtor is required to have an interest in the encumbered property. *See Johnson,* 53 B.R. at 922. An absolute transfer upon pre-petition service of a summons or citation would have deprived the Debtors of the required interest and would remove section 522(f)(1) from the Debtors' arsenal.

With respect to the wage deductions, the argument the judgment creditors make here was considered and rejected by Bankruptcy Judge Ginsberg in *In re Johnson,* 53 B.R. 919, 924 (Bankr.N.D.Ill.1985) and District Judge Duff in *Bryant v. General Elec. Credit Corp.,* 58 B.R. 144 (N.D.Ill. 1986). Under almost identical facts, *Johnson* held that Ill.Rev.Stat. ch. 110, Article XII, Part 8 provides the judgment creditor with a judicial lien on wages after service of the summons on a debtor's employer. *Johnson,* however, held that the lien does not deprive the debtor of all interest in the wages because the judgment creditor does not have an unconditional right to the encumbered wages until the state court enters a wage deduction order. 53 B.R. 923–24. Service of the summons merely begins the process whereby the judgment creditor and judgment debtor assert their rights to the wages. They must contest or defend the underlying judgment at a wage deduction hearing. *Id.; Felton v. Shead,* 6 Ill. App.3d 123, 126, 285 N.E.2d 162, 164 (1st Dist.1972). The employer holds the wages "subject to order of court." Ill.Rev.Stat.

ch. 110, § 12–808(b). Moreover, only the wage deduction order, not service of the summons, relieves the employer of all claims by the debtor and allows the employer to unconditionally pay the non-exempt wages over to the judgment creditor without risk of liability to the debtor. 53 B.R. at 924; Ill.Rev.Stat. ch. 110 § 12–812.

Judge Duff followed the same path to the same result in *Bryant,* reversing a bankruptcy court that had adopted the argument the creditors make here.

Illinois courts have not clearly defined the debtor's interest in property after service of garnishment summons and before entry of a wage deduction order. It is apparent, however, that the debtor continues to have some interest in his wages. The employer garnishee holds the debtor's funds as stakeholder until the wage deduction order is entered and the claims to the property are settled. *Robbins, Coe, Rubenstein & Shafran v. Ro Tek, Inc.,* 23 Ill.App.3d 705, 320 N.E.2d 157 (1st Dist.1974). Prior to the entry of the wage deduction order, the judgment debtor may challenge the underlying judgment and assert his rights to the funds. *Felton v. Shead,* 6 Ill. App.3d 123, 285 N.E.2d 162 (1st Dist. 1972); *In Re Marriage of Souleles,* 111 Ill.App.3d 865, 67 Ill.Dec. 485, 444 N.E.2d 721 (1st Dist.1982).

*Bryant,* 58 B.R. at 146. The same reasoning can be applied to the citation process. The interest imposed by the citation process on a judgment debtor's property is terminated by one of three events: 1) order of court, 2) satisfaction of the judgment, or 3) expiration of six months from the first personal appearance by the respondent. Ill.Rev.Stat. ch. 110A ¶ 277(f) (termination of supplementary proceedings) and Ill.Rev. Stat. ch. 110 § 2–1402(d); *Fowler,* 90 B.R. at 377. Therefore, like the judgment creditor who causes a wage deduction summons to be served, the judgment creditor in a citation proceeding does not obtain an unconditional right to the encumbered property upon service of the citation. He must obtain a court order, requiring the property to be applied to his claim, before the occur-

rence of one of the other two events. At least until that order is entered, the debtor must still have an interest in the property.

The judgment creditors, however, challenge this reasoning in light of the recent opinion in *In re Waner Corp.*, 89 B.R. 751 (Bankr.N.D.Ill.1988), and the Seventh Circuit's decision in *In re Coppie*, 728 F.2d 951 (7th Cir.1984), *cert. denied sub nom.*, 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985).[4] *Coppie* was a preference case under section 547 of the Bankruptcy Code. The issue was whether an Indiana wage garnishment resulted in a preferential transfer within ninety days before bankruptcy. The resolution of that issue turned on when in the garnishment process the transfer occurred. The court emphasized that "state law governs in determining when a transfer of the debtor's property has occurred", 728 F.2d at 952, and then analyzed Indiana law. The court found that, following a hearing, the Indiana court had entered an order "that the judgment be a continuing lien on the future income of the debtor, i.e., continuous garnishment." *Id.* It is clear from the court's opinion that it was the court order that worked the critical transfer.

> Following *court orders* that the liens on these debtors' future income be continuous, the debtors no longer had a property interest in 10% of their future salaries. (Citation omitted). Rather, the employers owed that portion of their salaries directly to the garnishment plaintiffs and were liable to the plaintiffs for those amounts if the wages were not withheld *pursuant to the court orders.* True, the

> employers were not liable until the wages were actually earned, but *once the court orders were entered* the debtors were no longer legally entitled to 10% of their future salaries. Because the *court orders legally transferred* 10% of the debtors' wages to the garnishment plaintiffs, there were no transfers at the time of the actual garnishments in question.... [U]nder Indiana law, the debtors retained no interest in 10% of their future wages *following the entry of the garnishment orders.*

728 F.2d at 952–53 (emphasis added).[5] The distinction between *Coppie* and this case is obvious: Here, there was no court order fixing the rights of the parties. Two courts in this district have already distinguished *Coppie* on that ground. In *Bryant,* the district court held that an Illinois wage deduction proceeding did not divest the debtor of his interest in withheld wages before the entry of a wage deduction order. "Unlike the Indiana procedure in *Coppie,* there was no court order here transferring the funds away from Bryant." 58 B.R. at 145. The court therefore held that the debtor was entitled under section 522(f) to set aside the judgment creditor's lien on those wages. In *In re Nealis,* 52 B.R. 329, 333 (Bankr.N.D.Ill.1985), a preference case, the bankruptcy court held that:

> The Seventh Circuit opinion issued in *Matter of Coppie* is distinguishable. Although service of the garnishment summons outside the 90–day preference period did create a continuing lien, it did not terminate the debtor's interest in non-exempt wages which were then due and

---

**4.** Citicorp also relies on the transcript of Judge Ginsberg's oral ruling in the *Matter of DeShazor,* No. 88 B 10365, January 20, 1989. Following the rationale of *Waner,* Judge Ginsberg dismissed the debtor's action to avoid a preferential transfer under section 547(b), holding that a transfer had taken place outside the 90 day reach-back period when a wage deduction summons was served upon the debtor's employer. The ruling related only to an action under section 547(b) of the Code rather than section 522(f). Judge Ginsberg's decisions in *Johnson* and *In re Einoder,* 55 B.R. 319 (Bankr.N.D.Ill. 1985) (lien imposed by initiation of citation process in Illinois avoided under section 522(f)(1)) are in no way limited or diminished

by his recent holding in *DeShazor.* And to the extent *DeShazor* follows *Waner,* this court's comments about the latter are applicable to the former.

**5.** Bankruptcy courts outside this circuit have sharply criticized, and refused to follow, *Coppie* and similar authorities. *See In re Dunn,* 56 B.R. 275, 277–79 (M.D.La.1985); *In re Perry,* 48 B.R. 591, 596–98 (Bankr.M.D.Tenn.1985). Other courts have reached the same conclusion as *Coppie* under their states' laws. *See, e.g. In re Conner,* 733 F.2d 1560 (11th Cir.1984) (Georgia); *In re Woodman,* 8 B.R. 686 (Bankr.W.D.Wis. 1981) (Wisconsin).

those which subsequently became due. Until entry of the wage deduction order, the debtor retained an interest which, for the purposes of § 547, could not be transferred until the debtor acquired rights in his wages by earning them.

It is therefore clear that *Bryant* and *Johnson* are not inconsistent with *Coppie.* All three opinions agree that it is the entry of an order that fixes the rights of the parties, gives the creditor an unconditional right to the affected wages, and terminates the debtor's interest in those wages. The difference is not between the holdings in *Coppie* and *Bryant* and *Johnson,* but between Indiana and Illinois law. In Illinois, a wage deduction order is not entered until after the wages have been withheld, so that the order disposes of an existing fund in the hands of the employer. In Indiana, the order is entered earlier in the process, before the wages are earned, and establishes "a continuing lien upon the income or profits of the judgment debtor...." Ind. Code § 34–1–44–7 (1983). At least according to the Seventh Circuit, the effect of that court-ordered "continuing lien" is to divest the debtor of all interest in the affected future wages.

It is true that the Illinois statute provides that the wage deduction lien "shall continue as to subsequent earnings...." Ill.Rev.Stat. ch. 110, § 12–808(b). But it does not follow that the state law effect of a continuing lien is the same in Illinois as in Indiana. "The fact that the garnishment lien continues and attaches to earnings is not dispositive of the question whether the debtor also acquires rights and interests in the same wages as they are earned." *Perry,* 48 B.R. at 597. The answer to that questions depends on state law.

If it makes sense at all, the 'continuing levy' concept offered in *Riddervold [v. Saratoga Hospital,* 647 F.2d 342 (2nd Cir.1981) ] and applied in *Coppie* [to the Indiana continuing lien] operates only in a state which would recognize execution of the original writ of garnishment as accomplishing the complete end to the debtor's legal and equitable rights in future wages.

*Perry,* 48 B.R. at 596. According to *Bryant, Johnson,* and *Nealis,* Illinois is not such a state.

Similarly, with respect to the citation to discover assets, it is clear that no transfer of all the Debtor's interest in the bank account could have occurred without a court order. A citation itself does no more than freeze the asset in the hand of the cited party "until the further order of the court or the termination of the proceeding, whichever occurs first." Ill.Rev.Stat. ch. 110, § 2–1402(d)(1). A citation expires and any discovered assets become unfrozen and freely transferable to the debtor unless an order is entered within six months. *See Fowler,* 90 B.R. at 379 (citation lien terminates unless judgment creditor acts within six months). Since the mere passage of time can terminate the citation, and the creditor has no rights in the assets except the right to obtain an order, it is obvious that the debtor does not lose all interest in the property before an order is entered.

But the creditors here point out that the court in *Waner* reached a different conclusion in the context of a preference proceeding. In *Waner,* the debtor's bank was served with a citation to discover assets and garnishment summons more than ninety days before bankruptcy. The bank paid the balance of the account to the judgment creditor within the ninety day preference period. The trustee sued to avoid that payment as a preference under section 547 of the Bankruptcy Code. *Waner* held that service of the citation to discover assets and service of the garnishment summons had each created a lien and thereby transferred all of the debtor's interest in the bank account to the creditor even before the garnishment judgment order was entered. That is, in the *Waner* court's view it was the attachment of the citation and garnishment liens that immediately divested the debtor of all interest in the property and transferred that entire interest to the creditor at that time, so that, "when [the creditor] actually received payments of those accounts and moneys during the 90–day period it was merely receiving its own money, not a transfer from Debtor's property." 89 B.R. at 756.

This court cannot agree with the holding of the *Waner* court.[6] Indeed, to this Court's ear, the notion that the attachment of a lien transfers all of the debtor's interest in the liened property sounds like an oxymoron. A lien is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(33). That is, a lien is a right to have property applied to payment of the debt. But that presupposes that someone else owns the property. Otherwise the lienholder would have a lien on his own property. "[I]t is necessarily supposed that title is in someone other than the lienholder. A lien is a qualified right which in a given case may be exercised over property of another.... [A] lien ... does not transfer title to the property...." 51 Am. Jur.2d, Liens, § 2. *See also* 25 I.L.P., Liens, § 2. A transfer of all the debtor's interest in property would satisfy the debt, not merely secure its payment.

Of course, Illinois, might, Humpty-Dumpty like, define the word "lien" to mean whatever it wants it to mean. For example, according to *Coppie*, Indiana has defined "continuing lien" to mean an absolute, immediate transfer of all of a debtor's interest. But the Illinois statutes involved here have not done that. As we have discussed, mere service of a wage deduction summons does not terminate the debtor's interest in the affected wages, and only gives the creditor the right to have those funds applied to the judgment by court order. See pages 536–39 supra. That is a lien in the true sense.

It is also clear, that commencement of supplementary proceedings by service of a citation to discover assets does not divest the judgment debtor of all interest in the discovered personal property. The judgment debtor or the party holding the judgment debtor's assets is only compelled to apply the discovered assets to the satisfaction of the judgment if an appropriate court order is entered. Ill.Rev.Stat. ch. 110 § 2–1402(b)(1). No such order has been entered here. The governing rules require a hearing at which any interested party may assert his or her right to the discovered assets before such an order is entered. Ill.Rev.Stat. ch. 110A ¶ 277(e); *See Meggison v. Stevens*, 21 Ill.App.3d 505, 316 N.E.2d 297 (1st Dist.1974). Although it is not clear that the judgment creditor even acquires a lien by mere service of a citation (see page 536 above), it is clear that the creditor cannot acquire all of the debtor's interests in discovered property without a court order following a hearing.

Moreover, the case law relied upon by the court in *Waner* does not support the conclusion that service of a citation to discover assets transfers all the debtor's interest in the affected property. For example, the *Waner* court said that it "follows the reasoning of Judge Ginsberg in *Einoder*" in holding that a citation transferred "*all* interest" in the funds involved. 89 B.R. at 755 (emphasis added). But *Einoder* held only that a citation resulted in "a transfer of *an* interest in the debtors' property...." 55 B.R. at 325 (emphasis added).

One of *Perry's* criticisms of *Coppie* is applicable here:

> *Riddervold, Coppie* and *Conner* oversimplify the concept of 'property' for bankruptcy purposes. The Supreme

---

**6.** It is tempting to simply distinguish or at least limit *Waner*, but there is no completely satisfying way to do that. *Waner* did deal only with the effect of a citation to discover assets on an existing asset (a bank account), not a wage deduction summons. And the same judge decided in *In re Gray*, 97 B.R. 930 (Bankr.N.D.Ill. 1989), that, "Under Illinois law, a debtor retains an interest in garnished wages until entry of a wage deduction order." 97 B.R. at 934. But limiting *Waner* to the citation issue is difficult, particularly because most of the cases *Waner* relied upon (such as *Coppie*) involved wage garnishments.

We could also say that *Waner* holds only that "a 'transfer' occurred within the meaning of § 547," 89 B.R. at 756, and this matter involves section 522. It is true that section 547 contains provisions defining when a transfer is made or perfected "for purposes of this section." 11 U.S.C. § 547(e). But this matter does not concern when the transfers were made or perfected, but the scope of the interests transferred. Section 547(e) does not deal with that and this Court agrees with the creditors that a transfer of all the debtor's interest for purposes of section 547 is a transfer of all the debtor's interest for purposes of section 522. We therefore confront *Waner* head-on.

Court has repeatedly recognized that property is not singular, but is comprised of a 'bundle of rights' and multiple divisible interest.

48 B.R. at 598 (citations omitted). Judge Ginsberg must have recognized that the fixing of a lien necessarily involves the transfer of less than "all interest" in the property because he said that the citation lien in *Einoder* could be avoided under section 522(f)(1), a result that requires a finding that the debtor retained an interest in the property. *Einoder*, 55 B.R. at 325–26.

The *Waner* court also relied upon *Riddervold v. Saratoga Hosp.*, 647 F.2d 342 (2d Cir.1981). But, contrary to the *Waner* court's view that Illinois law is similar to the New York statute construed in *Riddervold*, there is a vital difference overlooked by the *Waner* court. *Riddervold* involved the New York income execution statute, N.Y.C.P.L.R. § 5231. Under that statute, if a debtor fails to make certain payments on a judgment "the sheriff shall levy upon the money that the judgment debtor is receiving or will receive by serving a copy of the income execution." *Id.* (d). After that "levy" an employer is required by the mere service of the wage execution summons to immediately pay a portion of the debtor's wages each pay period to the sheriff for application to the judgment. *Id.*, (e). *Riddervold* described that procedure as a "continuing levy" and held that it resulted in a "novation whereby the employer owed 10% of the employee's salary not to the employee but to the sheriff for the benefit of the judgment creditor." 647 F.2d at 346.[7] The Second Circuit itself understood this "continuing levy" to be something

more than a lien. "We emphasize that we are here concerned with payments which were not made simply in discharge of a lien but were pursuant to an execution levied many months before the beginning of the 90 day period." 647 F.2d at 347.

What is important here is that the judgment creditor's right to have those wages applied to the judgment becomes unconditional under New York law immediately upon service of the wage execution. It is for that reason that the debtor loses all rights to the funds, according to the Second Circuit. In Illinois, by sharp contrast, and as we have seen, a wage deduction summons only requires an employer to withhold and accumulate wages, and act as a stakeholder, subject to a future court order. And a party holding property subject to a citation to discover assets has no obligation to deliver the property until an order is entered. The employer pays the withheld wages to the judgment creditor, and the cited party delivers the property, not pursuant to the summons or citation, but pursuant to the order, and it is the order that gives the creditor the unconditioned right to the funds or property.

Finally, the Supreme Court has said that it is "the basic purpose of the Bankruptcy Act to give the debtor's 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt....'" *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). "The availability of garnished wages as exempt property is a significant element in the debtor's 'fresh start.'" *Perry*, 48 B.R. at 600. Certainly, the same is true of a bank account frozen by a citation to discover assets. Consistent

---

**7.** The court's principal authority for this "cintinuing-levy-works-novation" theory is Judge Learned Hand's 1910 opinion in *In re Sims*, 176 F. 645 (S.D.N.Y.1910). But all Judge Hand did in *Sims* was to vacate the automatic stay to permit the creditors to enforce their state-law rights in the state courts. Nowhere does Judge Hand say that the debtor had lost all interest in the withheld wages, or suggest that there had been a novation. And relief from the automatic stay would have been appropriate even if the creditors had only an ordinary lien. Moreover, Judge Hand refused to vacate the stay to permit the creditors to collect a share of post-bankrupt-

cy wages, holding that wages earned after the petition were subject to the bankruptcy discharge. He distinguished ordinary contracts involving future payments (which would belong to the levying creditor even after bankruptcy) and rights to payments conditioned on the debtor's performance of services (which do not). But this result and Judge Hand's distinction are difficult to reconcile with the Second Circuit's novation theory. If the debtor irrevocably lost all his rights to future wages when the execution was served, by what mechanism was he restored to those rights by the mere filing of a bankruptcy petition?

**542**

with these bankruptcy policies, the Debtors' motions to avoid the liens under section 522(f)(1) and for turnover of the funds withheld pursuant to the wage deduction summonses and the citation to discover assets will be granted. Orders will be entered accordingly.