**In re Robert L. ROSOL and Rose C. Rosol, f/k/a Rose McNichols, Debtors.**

**In re Delia M. GLEISNER, Debtor.**

**Bankruptcy Nos. 89 B 8645, 89 B 9658.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 6, 1989.

Scott Kofkin, Korrub, Kofkin & Feld, Chicago, Ill., for debtors.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

The two cases now before this court each require a determination of the circumstances under which Chapter 7 debtors can recover funds withheld by their employers pursuant to Illinois wage assignments; the cases have been consolidated for purposes of this opinion only. The debtors in these cases seek a recovery of their deducted wages under section 522(f)(1) of the Bankruptcy Code. (Title 11, U.S.C., hereinafter referred to as the "Code"). For the reasons set forth below, these motions are denied.

## I. FINDINGS OF FACT

The facts relevant to the pending motions are undisputed. In one case, Delia Gleisner, the debtor, entered into a loan agreement with All Net Glenview Credit Union. To secure the debt, Gleisner executed a wage assignment. When Gleisner defaulted on the loan, the credit union served a demand notice on her employer pursuant to Illinois statute. At the time Gleisner filed for bankruptcy under Chapter 7, her employer was holding $77.73 from Gleisner's paycheck under the wage assignment.

In the other case, the facts are similar. The debtors, Robert and Rose Rosol, entered a retail installment contract with Alonzi Acceptance Corporation. To secure the debt, the Rosols executed a wage assignment. After their default, Alonzi Acceptance served a demand notice on one of the Rosols' employers pursuant to Illinois statute. At the time the Rosols filed for bankruptcy under Chapter 7, the employer was holding $57.59 under the prior wage assignment.

During the Chapter 7 proceedings, the debtors each filed a motion to avoid their respective wage assignments under section 522(f)(1), which authorizes debtors to avoid "judicial liens." Neither motion was contested. However, the court questioned whether the facts set forth in the motions allowed for the relief sought. *See* Bankruptcy Rule 9013 (requiring that motions state the grounds for relief with particularity). The court requested debtors' counsel to brief this issue.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction.

■ The motions now before the court involve the debtors' power to avoid liens under section 522(f)(1). Lien avoidance matters are civil proceedings arising in or related to cases under the Bankruptcy Code and so are within the jurisdiction of the district court. 28 U.S.C. § 1334(b). General Local Rule 2.33 of the Northern District of Illinois refers such matters to the bankruptcy judges of this district. Furthermore, because they concern the administration of the estate, these motions are "core matters" which, upon reference, a bankruptcy judge may determine on a final basis pursuant to 28 U.S.C. section 157(b)(2)(A). *See In re Jamison*, 93 B.R. 595, 596 (Bankr.S.D.Ohio 1988).

### B. Requirements under Section 522(f)(1).

Section 522(f)(1) of the Bankruptcy Code is the sole basis on which the debtors in these cases seek relief. It provides, in relevant part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien in an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is a

(1) a judicial lien; ...

■ To obtain relief under this section, the debtors must satisfy five requirements. First, the wage assignments must be "liens" under the Code. Second, the assignments must constitute "judicial liens." Third, the debtor must have an interest in the property at the time of filing for bankruptcy. Fourth, the debtor must properly claim an exemption as to the property. Fifth, the creditor's lien must impair the debtor's exemption. *See In re Johnson*, 53 B.R. 919, 922 (Bankr.N.D.Ill.1985).

■ The debtors' motions easily satisfy the fourth and fifth requirements. The debtors may properly claim wages as exempt under the Illinois "wild card" exemption. Ill.Rev.Stat. ch. 110 ¶ 12–1001(b) (1987).[1] Further, the wage assignments in these cases would impair that exemption—the debtors could claim the wages as exempt but for the creditors' wage assignments. *See Johnson*, 53 B.R. at 923 (holding that a wage garnishment impairs the Illinois "wild card" exemption.)

However, the motions raise serious questions as to the remaining three requirements: (1) whether an Illinois wage assignment is a "lien" under the Code, (2) if so, whether a wage assignment is a "judicial lien" under the Code, and (3) whether the debtors had an interest in the assigned wages when they filed for bankruptcy.

---

**1.** Illinois has "opted out" of the federal exemptions, pursuant to section 522(b)(1) of the Code. Ill.Rev.Stat. ch. 110, ¶ 12–1201 (1987). Thus, Illinois law provides the relevant exemptions here. The Illinois "wild card" exemption allows debtors to protect "[t]he debtor's equity interest, not to exceed $2,000 in value, *in any other property*." Ill.Rev.Stat. ch. 110, ¶ 12–1001(b) (1987) (emphasis added). The phrase "in any other property" is broadly construed to favor debtors. *In re Barker*, 768 F.2d 191, 196 (7th Cir.1985).

C. Wage Assignment Law.

■ Each of these three issues depends, to some extent, on the law that defining wage assignments in Illinois. *See In re Weatherspoon*, 101 B.R. 533, 535 (Bankr. N.D.Ill.1989) (analyzing Illinois state law to determine whether an Illinois wage garnishment was avoidable under section 522(f)(1)). The main sources of this law are the Illinois Wage Assignment Act, Ill.Rev. Stat. ch. 48 ¶ 39.01 *et seq.* (1987), and the Federal Trade Commission ("FTC") Credit Practice Regulations, 16 C.F.R. § 444.2(3) (1984).

Before the FTC regulations in 1984, Illinois wage assignments were "a customary form of security required of an employee seeking credit either from pawnbrokers, installment plan merchants, wageloan corporations, small loan companies, so-called 'loan sharks,' and others." *People v. Redfield*, 366 Ill. 562, 564, 10 N.E.2d 341 (1937). Under a typical wage assignment, a debtor assigned future wages to secure a debt. Ill.Rev.Stat. ch. 48 ¶ 39.1(2) (1987).

The principal feature of a wage assignment is that it allows a creditor, upon the debtor's default, to satisfy the indebtedness without going to court. As an alternative to judicial process, the Illinois Wage Assignment Act establishes a three stage process for the collection of the assigned wages. First, the creditor holding a wage assignment serves a "notice of intention" on the debtor and the debtor's employer, stating its intention to demand the assigned wages in twenty days or more. *Id.* at ¶ 39.2(3). Second, if the period specified in the notice ends without the debtor/employee asserting a notice of defense or curing the default, the creditor demands the wages from the debtor's employer. *Id.* at ¶ 39.2. Third, again assuming that the debtor neither notifies the employer of some defense to the assignment nor cures the default, the "employer *shall* commence payment to the creditor" five days after receipt of the demand. *Id.* at ¶ 39.4b (emphasis added).

In 1984, the FTC severely limited the use of certain types of wage assignments. In a survey of state law, including that of Illinois, the FTC discovered two types of wage assignments. The first type consists of wage assignments that are merely devices for consumers to make regular payments. Examples of this type of wage assignment include voluntary payroll deductions and preauthorized electronic fund transfers. FTC Trade Regulation Rule, 49 Fed.Reg. 7756 (1984). The FTC found that this type of wage assignment does not harm consumers and, consequently, this type of assignment was not regulated. *Id.* at 7756.

The second type, in contrast, is the wage garnishment used as a security device, to compel payment of a debt from future wages in the event of a default—that is, the type of assignment created by the Illinois statute described above. The FTC found that this type of wage assignment, in part because of the lack of procedural safeguards, harmed consumers, and thus prohibited such assignments unless they were expressly revocable by the debtor.

Under the FTC's regulation, any wage assignment is an unfair credit practice unless:

(i) The assignment by its terms is revocable at will, or

(ii) The assignment is a payroll deduction plan or preauthorized payment plan, commencing at the time of the transaction, in which the consumer authorizes a series of wage deductions as a method of making each payment, or

(iii) The assignment applies only to wages or other earnings at the time of the assignment. 16 CFR ch. 1 § 444.2(a)(3) (1984).

The FTC emphasized that expressly revocable wage assignments were acceptable because they are "truly voluntary." 49 Fed.Reg. at 7760 fn. 91. Payroll deductions plans were allowed because such plans are methods of payment as the obligation becomes due and not a collection. *Id.* at 7760. Wage assignment of wages earned at the time of the assignment were allowed in order to eliminate a technical problem for California creditors. *Id.* at 7760. The plain thrust of the regulations is to limit wage assignments to voluntary payments and eliminate the use of wage

assignments as a method of collecting debts, without judicial process, upon a debtor's alleged default.

Although there appear to be no decisions applying the FTC regulations to Illinois wage assignments, it seems clear that, under the regulations, assignments of future wages executed to secure a debt have been fundamentally altered in this state. Before the regulations were adopted, Illinois wage assignments offered genuine security. The creditors obtained a claim on their debtors' wages which could be enforced after the debtors defaulted and the creditor complied with the Illinois Wage Assignment Act. Under the regulations, these assignments offer no real security, since they must be expressly revocable at will.[2] Because a debtor may now terminate wage deductions at any stage in the assignment process, it must be concluded that if an employer is required to deduct wages this is due to the debtor's decision to allow the deduction.

D. The Issues Raised by the Pending Motions.

With the foregoing background, the three issues raised by the debtors' section 522(f)(1) motions can be addressed.

1. Wage assignments are not "liens."

■ It has long been established that a wage assignment cannot operate as a lien on wages of a debtor earned *after* the filing of a bankruptcy. *In re Miranda Soto,* 667 F.2d 235, 237 (1st Cir.1981) (relying on Section 552(a) of the Code, which provides that "property acquired ... by the debtor after commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case"); *Local Loan Co. v. Hunt,* 292 U.S. 234, 243, 54 S.Ct. 695, 698, 78 L.Ed. 1230 (1934) (holding, under the 1898 Bankruptcy

Act, that liens may not attach to property not yet in existence).

Here, however, the question is whether the debtors' wage assignments gave rise to any lien on the wages that they earned prior to their bankruptcies. The Code defines "liens" as "charge[s] against or interest in property to secure payment of a debt or performance of an obligation." Code § 101(33). Under this definition, given the assumption that the assignments were revocable at will, there were no liens. Instead of giving the creditors a charge against or interest in the debtors' wages, these assignments merely gave the debtors an opportunity to pay their defaulted obligations through payroll deductions. At any time they wished to stop the process, they had the right to do so; the creditors—like any unsecured creditor lacking a judgment—had to rely for payment on the willingness of the debtors to pay. This certainly was the result that the FTC regulations were designed to accomplish. Wage assignments that are terminable at the debtor's will are not "liens" under the Code.[3]

2. Wage assignments are not judicial liens.

Even if the foregoing analysis were incorrect, and a revocable wage assignment could properly be considered a "lien," the wage assignments in these cases still would not be "judicial liens." The Code defines three types of liens: "judicial liens," "statutory liens," and "security interests." These "three categories are mutually exclusive and are exhaustive except for certain common law liens." H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6269. The Code distinguishes these categories by the manner in which each lien is obtained or created. *In re Brunson,* 87 B.R. 304, 311 (Bankr.D.N.J.1988).

---

**2.** The court assumes that the wage assignments involved in the pending cases are expressly revocable at will, since the complaints make no allegation that the assignments were unfair credit practices, and since these assignments were triggered by the debtor's default, and thus were neither voluntary payment plans or assignments of wages already due, the only other

allowable forms of assignments under the FTC regulations.

**3.** Voluntary payments to a creditor might, however, constitute voidable preferences under section 547(b)(1) of the Code, subject to the consumer debt limitation of section 547(c)(7).

■ Judicial liens are "obtained by judgment, levy, sequestration or other legal or equitable process or proceeding." Code § 101(32). Judicial liens also consist of liens which are "dependent on a statute" as long as the lien "arises from" the judicial process. Code § 101(47). For example, Illinois wage garnishments are "judicial liens" because they are created through the judicial process.[4]

Wage assignments do not fit this description. A wage assignment is created by an agreement which complies with the execution requirements set forth in the Illinois Wage Assignment and the FTC regulations. Ill.Rev.Stat. ch. 48 ¶ 39.1 (1987). As discussed earlier, the singular quality of the wage assignment process, the quality which partially prompted the FTC regulations, is its *lack* of judicial safeguards. *See American Financial Services, Inc. v. F.T.C.*, 767 F.2d 957, 974 (D.C.Cir.1985) (stating that wage assignments, in contrast to wage garnishments, do not require any judgment and can be filed without any judicial review of the creditor's claim). Thus, wage assignments are not created through the judicial process and are not "judicial liens" under the Code. *See In re Morris*, 333 F.Supp. 204 (E.D.Mich.1971) (holding that a Michigan wage assignment was not a lien "obtained by attachment, judgment, levy or other equitable process" under section 67 of the Bankruptcy Act because Michigan wage assignments were created by contract).

■ "Statutory liens" are the next possibility. A statutory lien is a "lien *arising solely by statute* on specified circumstances or conditions, or lien of distress for rent, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute."

Code § 101(47) (emphasis added). The legislative history further emphasizes that a statutory lien cannot be based on "an agreement or a judicial action." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, p. 6271. Examples of statutory liens include tax liens, mechanics liens, and warehouse liens. H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977).

A wage assignment is not a statutory lien. The fact that the Illinois statutes recognize wage assignments is irrelevant. *See Weatherspoon*, 101 B.R. at 535–36. Instead, the crucial issue is how the wage assignment is created. A wage assignment is created by agreement between the parties and not *automatically* by statute.

The final category is "security interests." In contrast to judicial or statutory liens which do not require an agreement between the parties, a security interest is a "lien created by an agreement." Bankruptcy Code § 101(45); *Collier on Bankruptcy*, ¶ 101.47. For example, mortgages are "security interests." Collier, *supra*, at ¶ 101.45.

An Illinois wage assignment, if it is a lien at all, fits this definition. Illinois wage assignments, like mortgages, are created by written agreements that comply with applicable state law. Indeed, the Illinois courts have themselves recognized the similarity between mortgages and wage assignments. *See Mallin v. Wenham*, 209 Ill. 252, 256, 70 N.E. 564 (1904) overruled on other grounds *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). It follows that a wage assignment, created by agreement, is a security interest to the extent that it is a lien of any kind, rather than a judicial lien subject to avoidance under section 522(f)(2) of the Code.

---

**4.** *See Weatherspoon*, 101 B.R. at 535. In *Weatherspoon*, the court held that the wage garnishments in Illinois are "purely a creature[s] of statute." *Id.* at 535. However, despite its dependence on statute, the court held that wage garnishments constitute judicial liens because the Illinois statutes "merely authorized the liens which arise through the judicial process." *Id.* at 535. Wage garnishments arise through the judicial process because (1) the creditor must obtain a state court judgment, (2) file an affidavit and interrogatories with the court, and (3) the creditor must serve a summons which evidences the underlying judgment. *Id.* at 535–6. Thus, as its name suggests, the distinguishing characteristic of a judicial lien is its creation through the judicial process.

3. The debtors had *no interest in the property at the time of filing.*

 The final issue to be determined under section 522(f)(1) also indicates that the section is inapplicable to the facts asserted in the pending motions—these motions do not state any facts indicating that the debtors retained an interest in the assigned wages at the time their bankruptcies were filed. To determine whether the debtors retained such an interest in the assigned wages, the court must determine when the creditors obtained an unconditional right to the assigned wages under applicable state law. *Weatherspoon,* 101 B.R. at 537; *Johnson,* 53 B.R. at 923–924; *Bryant v. General Electric Credit Corp.,* 58 B.R. 144, 145 (N.D.Ill.1986).

As set forth above, a creditor obtains an unconditional right to the assigned wages under Illinois law upon satisfying the three conditions of service of a "notice of intent" on the debtor, service of a demand on the debtor's employ, and passage of a five day grace period. Then, if the debtor has not notified its employer of any defenses, cure or revocation of the assignment, the creditor obtains an unconditional right to the funds.

The motions fail to allege that the debtor served a "notice of defense", or cured or revoked the assignment before the three stages passed. In fact, the motions and memoranda assert facts which are consistent with the opposite conclusion. The motions and memoranda state that the debtors defaulted, the creditors demanded the wages, and the employers deducted wages pursuant to the wage assignment. From the facts set forth in the motion, then, it appears that the creditors complied with the three stage process and obtained an unconditional right to the funds before these bankruptcy cases were filed.

Thus, three separate requirements for the avoidance of a lien under section 522(f)(1) are not satisfied by the pending motions. The debtors may have remedies with respect to wages deducted pursuant to their assignments, but these remedies do not include avoidance of judicial liens.

## CONCLUSION

For the reasons stated above, the Debtors' motions to avoid wage assignments under Code section 522(f)(1) are denied. Appropriate orders will be entered in each case.